**SHULMAN KESSLER LLP**
Troy L. Kessler
Marijana F. Matura
510 Broadhollow Road, Suite 110
Melville, New York 11747
Telephone: (631) 499-9100

**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Jennifer L. Liu
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **KIM MORRIS, MELISSA ADLIN and JORGE GUADRON, on behalf of themselves and all others similarly situated,**<br><br>**Plaintiffs,**<br><br>**-against-**<br><br>**AFFINITY HEALTH PLAN, INC.,**<br><br>**Defendant.** | **No. 09 Civ. 1932 (ALC)** |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
## FOR APPROVAL OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ................................................................................................ 1

II.  CLASS COUNSEL ARE ENTITLED TO A REASONABLE FEE OF ONE-THIRD OF
THE SETTLEMENT FUND ............................................................................... 2

    A.  The Percentage Method Is the Preferred Method for Awarding Attorneys' Fees in
Common Fund Cases in the Second Circuit .......................................... 3

    B.  The *Goldberger* Factors Support an Award of One-Third of the Fund ................. 6

        1.  Class and Plaintiff's Counsel's Time and Labor ....................................... 6

        2.  Magnitude and Complexity of the Litigation........................................... 11

        3.  Risk of Litigation ................................................................................ 12

        4.  Quality of Representation .................................................................... 13

        5.  Fee in Relation to the Settlement ........................................................ 15

        6.  Public Policy Considerations ............................................................... 16

III.  THE LODESTAR CROSS CHECK FURTHER SUPPORTS AN AWARD TO CLASS
COUNSEL OF ONE-THIRD OF THE SETTLEMENT FUND.................................... 17

IV.  CLASS COUNSEL ARE ENTITLED TO REIMBURSEMENT OF COSTS UNDER
THE SETTLEMENT AGREEMENT ................................................................... 19

V.  CONCLUSION.............................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*A.H. Phillips v. Walling*,
    324 U.S. 490 (1945) ...........................................................................................................16

*In re Am. Bank Note Holographics*, *Inc.*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001)................................................................................4

*Ansoumana v. Gristede's Operating Corp.*,
    201 F.R.D. 81 (S.D.N.Y. 2001) .......................................................................................11

*Arbor Hill Concerned Citizens Neighborhood*
    *Association v. County of Albany*,
    522 F.3d 182, 191 (2d Cir. 2008).................................................................................4, 19

*Avila v. Northport Car Wash*, Inc.,
    774 F. Supp. 2d 450 (E.D.N.Y. 2011) .............................................................................14

*Barrentine v. Arkansas-Best Freight Sys., Inc.*,
    450 U.S. 728 (1981)..........................................................................................................11

*In re Boesky Sec. Litig.*,
    888 F. Supp. 551 (S.D.N.Y. 1995) ..................................................................................18

*Brunson v. City of New York*,
    Nos. 94 Civ. 4507 & 5632, 2000 WL 1876910
    (S.D.N.Y. Dec. 22, 2000)..................................................................................................13

*Buccellato v AT&T Operations, Inc.*,
    No. 10 Civ. 463, 2011 WL 4526673 (N.D. Cal.) (June 30, 2011)...........................................19

*Campos v. Goode*,
    No. 10 Civ. 224, 2010 WL 5508100 (S.D.N.Y. Nov. 29, 2010) ...........................................14

*Cano v. Four M Food Corp.*,
    No. 08 Civ. 3005, 2009 WL 5710143 (E.D.N.Y. Feb. 3, 2009)..............................................14

*Cent. States Se. & Sw. Areas Health & Welfare Fund v.*
    *Merck-Medco Managed Care, LLC*,
    504 F.3d 229 (2d Cir. 2007)..............................................................................................10

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)..............................................................................................12

*Clark v. Ecolab Inc.*,
　Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672,
　2009 WL 6615729 (S.D.N.Y. May 11, 2010) ........................................................14

*Clark v. Ecolab Inc.*,
　No. Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672,
　2010 WL 1948198 (May 11, 2010) ........................................................................16

*Cohen v. Apache Corp.*,
　No. 89 Civ. 76, 1993 WL 126560 (S.D.N.Y. Apr. 21, 1993)..................................16

*County of Suffolk v. Long Island Lighting Co.*,
　907 F.2d 1295 (2d Cir. 1990)................................................................................10

*Cruz v. Lyn-Rog Inc.*,
　754 F. Supp. 2d 521 (E.D.N.Y. 2010) ...................................................................14

*Danieli v. International Business Machines Corp.*,
　No. 08 Civ. 3688, 2009 WL 6583144 (S.D.N.Y. Nov. 16, 2009) ..........................14

*deMunecas v. Bold Food, LLC*,
　No. 09 Civ. 440, 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) ....................3, 9, 14

*Deposit Guar. Nat'l Bank v. Roper*,
　445 U.S. 326 (1980).............................................................................................17

*Diaz v. Eastern Locating Service Inc.*,
　No. 10 Civ. 4082, 2010 WL 2945556 (S.D.N.Y. July 22, 2010) ...........................14

*Dorn v. Eddington Security, Inc.*,
　No. 08 Civ. 10271, 2011 WL 382200 (S.D.N.Y. Jan. 21, 2011)............................14

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
　No. 05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ............................5

*Frank v. Eastman Kodak, Co.*,
　228 F.R.D. 174 (W.D.N.Y. 2005)....................................................................15, 17

*Garcia v. Pancho Villa's Huntington Vill., Inc.*,
　No. 09 Civ. 486, 2011 WL 6287932 (E.D.N.Y. Dec. 15, 2011) ............................14

*In re Gilat Satellite Networks, Ltd.*,
　No. 02 Civ. 1510, 2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007)..........................16

*Gilliam v. Addicts Rehab. Ctr. Fund*,
　No. 05 Civ. 3452, 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ............................15

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ..........................................................5

*Goldberger v. Integrated Res. Inc.*,
    209 F.3d 43 (2d Cir. 2000)............................................. passim

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994) ............................................................19

*Hicks v. Stanley*,
    No. 01 Civ 10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) .........................................18

*Hughes v. Getronics Wang LLC*,
    No. 07 Civ 10356, 2009 WL 6540166 (S.D.N.Y. Oct. 21, 2009) .........................................14

*In re Indep. Energy Holdings PLC Sec. Litig.*,
    302 F. Supp. 2d 180 (S.D.N.Y. 2003).........................................19

*J.I. Case Co. v. Borak*,
    377 U.S. 426 (1964).........................................................................17

*Johnson v. Brennan*,
    No. 10 Civ 4712, 2011 WL 1872405 (S.D.N.Y. May 17, 2011)...........................................14

*Johnson v. Brennan*,
    No. 10 Civ 4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) .................................. passim

*Karpus v. Borelli*,
    Nos. 02 Civ. 6527, 03 Civ. 1194,
    2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) ..........................................................5

*Khait v. Whirlpool Corp.*,
    No. 06 Civ. 6381, 2009 WL 6490085 (E.D.N.Y. Oct. 1, 2009) .............................................14

*Khait v. Whirlpool Corp.*,
    No. 06 Civ. 6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) .................................. passim

*LeBlanc-Sternberg v. Fletcher*,
    143 F.3d 748 (2d Cir. 1998)............................................................19

*Lewis v. Triborough Bridge & Tunnel Auth.*,
    No. 97 Civ. 0607, 2001 WL 1898318 (S.D.N.Y. Aug. 6, 2001) .............................................20

*In re Lloyd's Am. Trust Fund Litig.*,
    No. 96 Civ.1262, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ......................................2, 18

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002)...............................................16, 19

*Matheson v. T-Bone Restaurant, LLC*,
    No. 09 Civ. 4214, 2011 WL 6402303 (S.D.N.Y. Sept. 13, 2011) ...........................................14

*McDaniel v. County of Schenectady*,
    595 F.3d 411 (2d Cir. 2010)..............................................................................................3, 4

*McMahon v. Olivier Cheng Catering & Events, LLC*,
    No. 08 Civ. 8713, 2010 WL 2399328 (S.D.N.Y. Mar. 2, 2010) .............................................3

*McMahon v. Olivier Cheng Catering and Events, LLC*,
    No. 08 Civ. 8713, 2009 WL 6583141 (S.D.N.Y. Dec. 29, 2009)..........................................14

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
    No. 06 Civ. 4270, 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ....................................12, 16

*Moore v. Eagle Sanitation, Inc.*,
    276 F.R.D. 54 (E.D.N.Y. 2011) ...........................................................................................14

*Morris v. Affinity Health Plan, Inc.*,
    No. 09 Civ. 1932, 2011 WL 6288035 (S.D.N.Y. Dec. 15, 2011)……………………………..1

*In re NASDAQ Market-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) .........................................................................................19

*O'Dell v. AMF Bowling Centers, Inc.*,
    No. 09 Civ. 759, 2009 WL 6583142 (S.D.N.Y. Sept. 18, 2009) ...........................................14

*O'Grady v. Mohawk Finishing Prods., Inc.*,
    No. 96 Civ.1945, 1999 WL 30988 (N.D.N.Y. Jan. 15, 1999) ...............................................20

*Olick v. Parker & Parsley Petroleum Co.*,
    145 F.3d 513 (2d Cir. 1998)................................................................................................15

*In re PaineWebber Ltd. P'ships Litig.*,
    999 F. Supp. 719 (S.D.N.Y. 1998) ......................................................................................10

*Parker v. Jekyll & Hyde Entm't Holdings, LLC*,
    No. 08 Civ. 7670, 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010) ........................................10, 18

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985)...........................................................................................................17

*Pineda v. Jim-Mar Consultants, Inc.*,
    741 F. Supp. 2d 398 (E.D.N.Y. 2010), *modified*, 741 F. Supp. 2d 403...................................14

*In re Polaroid ERISA Litig.*,
    No. 03 Civ. 8335, 2007 WL 2116398 (S.D.N.Y. July 19, 2007) .........................................4, 5

*Prasker v. Asia Five Eight LLC*,
No. 08 Civ. 5811, 2009 WL 6583143 (S.D.N.Y. Sept. 22, 2009) .......................................... 14

*In re Prudential Sec. Inc. Ltd. P'ship Litig.*,
912 F. Supp. 97 (S.D.N.Y. 1996) ........................................................................................... 11

*Rabin v. Concord Assets Grp., Inc.*,
No. 89 Civ. 6130, 1991 WL 275757 (S.D.N.Y. Dec. 19, 1991) .......................................... 19

*In re Ramp Corp. Sec. Litig.*,
No. 05 Civ. 6521, 2008 WL 58938 (S.D.N.Y. Jan. 3, 2008) ............................................. 4, 5

*Reyes v. Altamarea Group, LLC*,
No. 10 Civ. 6451, 2011 WL 4599773 (S.D.N.Y. Jun. 3, 2011) .......................................... 14

*Reyes v. Altamarea Grp., LLC*,
No. 10 Civ. 6451, 2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) ..................................... 3, 18

*Reyes v. Buddha-Bar NYC*,
No. 08 Civ. 2494, 2009 WL 5841176 (S.D.N.Y. Jan. 29, 2009) .......................................... 15

*Reyes v. Buddha-Bar NYC*,
No. 08 Civ. 2494, 2009 WL 5841177 (S.D.N.Y. May 28, 2009) .......................................... 12

*In re RJR Nabisco, Inc. Sec. Litig.*,
MDL No. 818, No. 88 Civ. 7905,
1992 WL 210138 (S.D.N.Y. Aug. 24, 1992) ........................................................................ 19

*Salomon v. Adderley Indus.*,
No. 11 Civ. 6043, 2012 WL 716197 (S.D.N.Y. Mar. 6, 2012) .......................................... 14

*Samiento v. World Yacht, Inc., et al.*,
883 N.E.2d 990 (N.Y. 2008) .................................................................................................. 17

*Sand v. Greenberg*,
No. 08 Civ. 7840, 2010 WL 69359 (S.D.N.Y. Jan. 7, 2010) ........................................... 3, 17

*Sand v. Greenberg*,
No. 08 Civ. 7840, 2011 WL 1338196 (S.D.N.Y. Mar. 22, 2011) .......................................... 14

*Savoie v. Merchs. Bank*,
166 F.3d 456 (2d Cir. 1999) .................................................................................................. 18

*Stefaniak v. HSBC Bank USA, N.A.*,
No. 05 Civ. 720S, 2008 WL 7630102 (W.D.N.Y. June 28, 2008) ..................................... 16

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
258 F. Supp. 2d 254 (S.D.N.Y. 2003) ...................................................................................... 4

*In re Sumitomo Copper Litig.*,
    74 F. Supp. 2d 393 (S.D.N.Y. 1999)...................................................................4, 16

*Taft v. Ackermans*,
    No. 02 Civ. 7951, 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007)................................13

*Torres v. Gristede's Operating Corp.*,
    Nos. 04 Civ. 2216, 08 Civ. 8531, 08 Civ. 9627,
    2010 WL 2572937 (S.D.N.Y. Jun. 1, 2010) ...........................................................14

*Varljen v. H.J. Meyers & Co.*,
    No. 97 Civ. 6742, 2000 WL 1683656 (S.D.N.Y. Nov. 8, 2000) ...............................5

*Velez v. Majik Cleaning Serv., Inc.*,
    03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007)..........................4, 5, 15

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)......................................................................................4, 5

*Westerfield v. Washington Mutual Bank*,
    Nos. 06 Civ. 2817, 08 Civ. 287,
    2009 WL 6490084 (E.D.N.Y. June 26, 2009) .......................................................14

*Willix v. Healthfirst, Inc.*,
    No. 07 Civ. 1143, 2010 WL 5509089 (E.D.N.Y. Nov. 29, 2010) ...........................14

*Willix v. Healthfirst, Inc.*,
    No. 07 Civ. 1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011).....................passim

## I.     <u>INTRODUCTION</u>

In connection with Plaintiff's Motion for Certification of the Settlement Class and Final Approval of the Class Action Settlement ("Motion for Final Approval"), filed simultaneously with this motion,[1] Class Counsel respectfully moves this Court for an award of attorneys' fees in the amount of one-third of the Settlement Fund (the "Fund") and reimbursement of $7,707.10 in out-of-pocket expenses that Class and Plaintiff's Counsel[2] incurred in successfully prosecuting this action.

Over the past three years, Class Counsel spent approximately 868 attorney, paralegal, and support staff hours prosecuting this case.[3] Decl. of Troy L. Kessler ("Kessler Decl.") ¶ 136.  In addition, over the past five months, Plaintiff's Counsel has spent an additional 390 attorney, paralegal, and support staff hours defending the settlement.[4]  Declaration of Justin M. Swartz ("Swartz Decl.") ¶ 14.  Multiplying these hours by the hourly rate of each attorney, paralegal, and staff member results in a lodestar amount of approximately $274,393 for Class Counsel's work, and approximately $141,780 for Plaintiff's Counsel's work, for a total of $416,173 for Class and Plaintiff's Counsel.  Kessler Decl. ¶ 138; Swartz Decl. ¶ 14.

Class Counsel's request for one-third of the Fund is 3.0 times their own "lodestar" of

---

[1]     For a detailed account of the factual and procedural background of this case, Class Counsel refer the Court to the Memorandum of Law in Support of Plaintiff's Motion for Preliminary Approval and the supporting Declaration of Troy L. Kessler.

[2]     Pursuant to the Judge Batts's Order Granting Preliminary Approval, Shulman Kessler LLP serves as Class Counsel ("Class Counsel") in this matter.  *Morris v. Affinity Health Plan, Inc.*, No. 09 Civ. 1932, 2011 WL 6288035 (S.D.N.Y. Dec. 15, 2011).  Plaintiff Guadron ("Plaintiff") retained Outten & Golden LLP ("Plaintiff's Counsel") to represent him in his individual capacity for the purpose of assisting Class Counsel oppose Named Plaintiff and Objector Kim Morris's ("Objector Morris's") anticipated objection and secure approval of the settlement, which Plaintiff Guadron believes is good for the class.  Guadron Decl. ¶ 43.

[3]     This estimate only includes time through April 2, 2012. With the Court's permission, Class Counsel requests that it be allowed to supplement the time records at the fairness hearing.

[4]     This estimate only includes time through April 2, 2012. With the Court's permission, Class Counsel requests that it be allowed to supplement the time records at the fairness hearing.

$274,393 and just 2.0 times their lodestar and Plaintiff's Counsel's lodestar combined.  This is much less than what courts have awarded in similar cases.  Courts routinely award counsel two to six times lodestar in class action settlements.  *See, e.g.*, *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ.1262, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002) (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit").

Class and Plaintiff's Counsel's efforts to date have been without compensation, and their entitlement to payment has been wholly contingent upon achieving a good result.  Kessler Decl. ¶¶ 140, 142; Swartz Decl. ¶ 8.  For the reasons set forth below, Class Counsel respectfully submit that the attorneys' fees and expense reimbursement they seek are fair and reasonable under the applicable legal standards, and should be awarded in light of the contingency risk undertaken and the result achieved.

## II.   CLASS COUNSEL ARE ENTITLED TO A REASONABLE FEE OF ONE-THIRD OF THE SETTLEMENT FUND

Class Counsel are entitled to reasonable attorneys' fees to compensate them for their work in recovering withheld overtime compensation on behalf of the class.  The Settlement Agreement, which has been preliminarily approved by the Court, provides that "Class Counsel shall petition the Court for no more than one-third of the Total Settlement Amount as an award of attorneys' fees . . . . [and] reasonable litigation costs from the Total Settlement Amount, which shall not exceed $40,000."   Kessler Decl., Ex. S (Settlement Agreement) § 3.2.  In addition, the Court-approved Notice that was sent to all Class Members stated the following:

> Class Counsel will ask the Court to approve payment of up to one-third of the settlement fund to them for attorneys' fees. The fees would pay Class Counsel for investigating the facts, litigating the case, negotiating the settlement, and overseeing and assisting with the settlement administration process.

Kessler Decl., Ex. HH (Notice) ¶ G(3).   No Class Member has objected to the requested

attorneys' fees or expense reimbursement.  Kessler Decl. ¶ 144.  The request for one-third of the Fund plus expenses is reasonable and well within the range approved by courts in similar cases.

**A.   The Percentage Method Is the Preferred Method for Awarding Attorneys' Fees in Common Fund Cases in the Second Circuit**

In wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award.  *Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2011 WL 4599822, at *7 (S.D.N.Y. Aug. 16, 2011); *deMunecas v. Bold Food, LLC*, No. 09 Civ. 440, 2010 WL 3322580, at *8 (S.D.N.Y. Aug. 23, 2010); *Khait v. Whirlpool Corp.,* No. 06 Civ. 6381, 2010 WL 2025106, at *7-8 (E.D.N.Y. Jan. 20, 2010) (Carter, Mag.).  Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general," attorneys who fill that role must be adequately compensated for their efforts.  *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 4357376, at *13 (S.D.N.Y. Sept. 16, 2011); *deMunecas*, 2010 WL 3322580, at *8; *Sand v. Greenberg*, No. 08 Civ. 7840, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010) (statutory attorneys' fees are meant to "encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel").  If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk.  *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *6 (E.D.N.Y. Feb. 18, 2011); *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713, 2010 WL 2399328, at *7 (S.D.N.Y. Mar. 2, 2010); *Sand*, 2010 WL 69359, at *3 ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected").

Although there are two ways to compensate attorneys for successful prosecution of statutory claims – the lodestar method and the percentage of the fund method, *McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) – the trend in this Circuit is to use the

percentage of the fund method in common fund cases like this one.  *Id.*; *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *Johnson*, 2011 WL 4357376, at *14.

There are several reasons that courts prefer the percentage method.  First, the percentage method "directly aligns the interests of the class and its counsel" because it provides an incentive to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made.  *Wal-Mart Stores*, 396 F.3d at 122 (internal quotation marks omitted); *In re Ramp Corp. Sec. Litig.*, No. 05 Civ. 6521, 2008 WL 58938, at *2 n.2 (S.D.N.Y. Jan. 3, 2008);   *In re Polaroid ERISA Litig.*, No. 03 Civ. 8335, 2007 WL 2116398, at *2 (S.D.N.Y. July 19, 2007); *Velez v. Majik Cleaning Serv., Inc.*, 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007).

The percentage method is also closely aligned with market practices because it "mimics the compensation system actually used by individual clients to compensate their attorneys."  *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (the percentage method "is consistent with and, indeed, is intended to mirror, practice in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients"); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 432 (S.D.N.Y. 2001) (the court should "determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order").  This rationale is consistent with the Second Circuit's decision in *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, where the Court held that a "presumptively reasonable fee" takes into account what a "reasonable, paying client" would pay.  522 F.3d 182, 191 (2d Cir. 2008).  While *Arbor Hill* is not controlling because it does not address a common fund fee petition, it supports use of the percentage of the

4

fund method. *Johnson*, 2011 WL 4357376, at \*14; *Willix*, 2011 WL 754862, at \*7.

Second, the percentage of the fund method promotes early resolution. It "provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores*, 396 F.3d at 122 (internal quotation marks omitted); *see also In re Ramp Corp. Sec. Litig.*, 2008 WL 58938, at \*2 n.2; *In re Polaroid ERISA Litig.*, 2007 WL 2116398, at \*5; *Velez*, 2007 WL 7232783, at \*7. The percentage method discourages plaintiffs' lawyers from running up their billable hours, one of the most significant downsides of the lodestar method. *Karpus v. Borelli*, Nos. 02 Civ. 6527 & 03 Civ. 1194, 2004 WL 2397190, at \*11 (S.D.N.Y. Oct. 26, 2004).

Third, the percentage method preserves judicial resources because it "relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions." *Id.* (quoting *Savoie v. Merchs. Bank*, 166 F.3d 456, 461 n.4 (2d Cir. 1999)). The "primary source of dissatisfaction [with the lodestar method] was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits." *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 48-49 (2d Cir. 2000); *see also In re Ramp Corp. Sec. Litig.*, 2008 WL 58938, at \*2 n.2; *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at \*16 (S.D.N.Y. July 27, 2007). While courts still use the lodestar method as a "cross check" when applying the percentage of the fund method, courts are not required to scrutinize the fee records as rigorously. *Goldberger*, 209 F.3d at 50; *see also In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) (using an "implied lodestar" for the lodestar cross check); *Varljen v. H.J. Meyers & Co.*, No. 97 Civ. 6742, 2000 WL 1683656, at \*5 (S.D.N.Y. Nov. 8, 2000) (using an "unexamined lodestar figure" for the lodestar cross check).

### B.    The *Goldberger* Factors Support an Award of One-Third of the Fund

Reasonableness is the touchstone for determining attorneys' fees.  In *Goldberger*, the Second Circuit articulated six factors for courts to consider in determining the reasonableness of fee applications:

(1)    the time and labor expended by counsel;

(2)    the magnitude and complexities of the litigation;

(3)    the risk of litigation;

(4)    the quality of representation;

(5)    the requested fee in relation to the settlement; and

(6)    public policy considerations.

209 F.3d at 50 (internal quotation marks omitted).  All of the *Goldberger* factors weigh in favor of granting approval of Class Counsel's fee application.

### 1.    Class and Plaintiff's Counsel's Time and Labor

Class Counsel spent significant effort to achieve the $2,500,000 settlement.  After the filing of the Amended Complaint, Class Counsel obtained affidavits from ten class members in support of the motion for conditional certification, which was drafted and filed in September 2010.  Kessler Decl. ¶ 30.  Thereafter, Class Counsel negotiated the terms of  a stipulation which conditionally certified the matter as a collective action pursuant to 29 U.S.C. § 216(b) and caused a Notice of Pendency and Consent to Join form to be circulated to 438 class members.  *Id*. ¶ 32. As a result thereof, an additional forty-five class members opted into the case.  *Id*. ¶ 34. Throughout this period of time, Class Counsel conducted interviews and reviewed documents provided by the three named Plaintiffs and sixty-one opt-ins.  *Id*. ¶ 40.  Class Counsel negotiated the terms of a targeted discovery agreement.  *Id*. ¶ 37.  In total, prior to conducting targeted

discovery Class Counsel had interviewed more than 100 class members. *Id.* ¶ 40.

During the course of discovery, Class Counsel obtained and reviewed approximately 6,000 pages of documents produced by Affinity Health Plan, Inc. ("Affinity"), including extensive time and payroll records. *Id.* ¶ 39. Class Counsel also analyzed data from Affinity indicating that class members had been compensated for all hours clocked, including overtime hours. *Id.* at 25, 51. Moreover, Class Counsel deposed three of Defendant's supervisory employees and defended the depositions of the three named Plaintiffs and five selected Opt-Ins. *Id.* ¶ 43. Class Counsel also interviewed and obtained non-party witness statements from two of Affinity's former supervisors. *Id.* ¶ 40. After reviewing the documents and deposition transcripts, Class Counsel spent significant time assessing the claims and defenses and calculating classwide damages. *Id.* ¶¶ 45-52; Decl. of Marijana F. Matura ("Matura Decl.") ¶¶ 58-78, 88, 90. Thereafter, in anticipation of mediation, Class Counsel prepared a mediation statement which provided an in-depth summary of Plaintiffs' claims, and attached more than 500 pages of exhibits. *Id.* ¶ 54.

On April 21, 2011, the parties appeared at a mediation conducted by Ruth D. Raisfeld, Esq. *Id.* ¶¶ 59-66. The parties agreed to the material terms of a settlement, which was approved and agreed to by the named Plaintiffs. *Id.* ¶ 67. Over the next four months, the parties negotiated and drafted a detailed final settlement agreement, including all terms. *Id.* ¶¶ 77, 83, 85. Class Counsel then submitted a preliminary approval motion and, after the motion was granted, has responded to more than 250 telephone calls and emails from class members requesting further information regarding the terms of the settlement and the calculation of their settlement award. *Id.* ¶¶ 110, 120, 130.

Since September 2011, Class Counsel has also expended numerous hours responding to Objector Morris's counsel's ("Objector's Counsel's") expansive requests for discovery, attacks on the settlement, and accusations of wrongdoing. *Id.* ¶¶ 112-18, 121-26. To help oppose the anticipated objections, Class Counsel associated with Plaintiff's Counsel, Outten & Golden LLP, a highly-respected plaintiffs' employment firm with substantial experience litigating and settling wage and hour class actions. *Id.* ¶ 119.

Class and Plaintiff's Counsel made repeated efforts to address Objector's Counsel's requests and concerns without the need for court intervention through correspondence and several meet and confers, while at the same time protecting the interests of the Class and other Opt-Ins not represented by Objector's Counsel. Kessler Decl. ¶¶ 123-26; Swartz Decl. ¶ 9. These efforts included providing Objector's Counsel access to the entire case file on two separate occasions and voluntarily producing nearly 5,000 pages of documents, many of which Plaintiff was not required to produce. Kessler Decl. ¶¶ 116, 118, 124; Swartz Decl. ¶ 10. The only documents Plaintiff declined to produce were the class list (which contained confidential information pertaining to class members), documents pertaining to Plaintiff Guadron and other Opt-Ins not represented by Objector's Counsel, and the confidential mediation statement and memorandum of understanding reached at the conclusion of the mediation. Kessler Decl. ¶ 125; Swartz Decl. ¶ 11. Objector's Counsel ultimately dropped their request for the class list and documents not pertaining to their clients. Kessler Decl. ¶ 125; Swartz Decl. ¶ 12.

Despite Class and Plaintiff's Counsel's efforts to resolve their discovery disputes, the parties required court intervention to resolve the following issues: Objector's Counsel's request for the production of the confidential mediation documents without agreeing to a standard protective order, as well as Objector's Counsel's request to take the deposition of Jorge Guadron

(who had already been deposed once in the case); Objector's Counsel's demands for Class and Plaintiff's Counsel to explain why the settlement was fair, adequate, and reasonable and to state the maximum potential recovery for the Class; and copies of documents with the names of other class members not represented by Objector's Counsel unredacted.  Kessler Decl. ¶ 125; Swartz Decl. ¶ 13, Ex. D (Letters to the Court).  With the exception of the confidential mediation documents, which Magistrate Judge Dolinger ordered to be produced subject to certain limitations, Objector's remaining requests were denied.  *See* Docket No. 124 (Order dated Feb. 10, 2012); Docket No. 126 (Order dated Feb. 23, 2012).

In litigating and settling this case Class Counsel expended approximately 868 hours of attorney, paralegal, and staff member time – an aggregate lodestar of $274,393.  Kessler Decl. ¶ 136.  Plaintiff's Counsel spent an additional 390 hours of attorney, paralegal, and staff member time, for a total lodestar of $141,780.  Swartz Decl. ¶ 14.  Combined, Class and Plaintiff's Counsel's total lodestar is $416,173.  Kessler Decl. ¶ 138; Swartz Decl. ¶ 16. These hours are reasonable for a case like this one and were compiled from contemporaneous time records maintained by each attorney, paralegal, and support staff participating in the case.  Kessler Decl. ¶ 136; Swartz Decl. ¶ 15.  Class and Plaintiff's Counsel used a small team of attorneys at any one time in order to minimize duplication of efforts and maximize billing judgment.  Kessler Decl. ¶ 136; Swartz Decl. ¶ 18.  Class and Plaintiff's Counsel made every effort to have work performed by the attorney or paralegal with the lowest hourly rate who was able to effectively perform it.  Swartz Decl. ¶ 18.

Moreover, the requested fee is not based solely on time and effort already expended; rather, it is also meant to compensate Class Counsel for time that will be spent administering the settlement in the future.  Kessler Decl. ¶ 139; Swartz Decl. ¶ 19; *see Khait*, 2010 WL 2025106,

9

at *9 ("The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request."); *see also deMunecas*, 2010 WL 3322580, at *10 (same).   In Class and Plaintiff's Counsel's experience, administering class settlements of this nature and size requires a substantial and ongoing commitment.   Kessler Decl. ¶ 140; Swartz Decl. ¶ 19.   For example, since the Notice was sent out, Class and Plaintiff's Counsel and staff have responded to class members' questions about the settlement and will continue to do so as the settlement administration continues.   Kessler Decl. ¶¶ 139, 143; Swartz Decl. ¶ 19; *see Parker v. Jekyll & Hyde Entm't Holdings, LLC*, No. 08 Civ. 7670, 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010) (approving fee award with 1.55 multiplier for lodestar and noting that "as class counsel is likely to expend significant effort in the future implementing the complex procedure agreed upon for collecting and distributing the settlement funds, the multiplier will diminish over time").

It is appropriate to consider Plaintiff's Counsel's time, in addition to Class Counsel's time, when ruling on this fee request.   Under the equitable fund doctrine, Plaintiff's Counsel may be compensated for their efforts defending the settlement, which benefits Plaintiff and the Class.   *See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 249 (2d Cir. 2007) ("[U]nder the 'equitable fund' doctrine, attorneys for the successful party may petition for a portion of the fund as compensation for their efforts . . . ."); *County of Suffolk v. Long Island Lighting Co*., 907 F.2d 1295, 1327-28 (2d Cir. 1990) (noting that key consideration in determining whether an attorney fee is awarded under equitable fund doctrine is "value to class of legal work performed for its benefit"); *In re PaineWebber Ltd. P'ships Litig.*, 999 F. Supp. 719, 723 (S.D.N.Y. 1998) ("The common or equitable fund doctrine

. . . allows an attorney whose actions have conferred a benefit upon a given group or class of litigants [to] file a claim for reasonable compensation for his efforts.") (internal quotation marks omitted)).

Critically, here, Plaintiff's counsel's recovery will not reduce the Class's net recovery because Class Counsel and Plaintiff's counsel have agreed that Plaintiff's counsel's compensation should come out of the one-third of the fund that Class Counsel seeks, not in addition to it.  *See* Swartz Decl., Ex. G (Fee Agreement).  As explained herein, Class Counsel's request for one-third of the fund is justified even without Plaintiff's counsel's contribution.  *See* Sections II.B.2-6, *infra*.

### 2.       Magnitude and Complexity of the Litigation

The size and difficulty of the issues in a case are significant factors to be considered in making a fee award.  *Goldberger*, 209 F.3d at 50; *In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 912 F. Supp. 97, 100 (S.D.N.Y. 1996).  Courts have recognized that wage and hour cases involve complex legal issues: "FLSA claims typically involve complex mixed questions of fact and law . . . . These statutory questions must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings."  *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981).

Among Fair Labor Standards Act ("FLSA") cases, the most complex type is the "hybrid" action brought here, where state wage and hour violations are brought as ("opt-out") class actions pursuant to Fed. R. of Civ. P. 23, in the same action as the FLSA collective action ("opt-in") mechanism pursuant to 29 U.S.C. § 216(b).  Because the same set of operative facts are being applied and analyzed similarly under both statutory frameworks, justice is served by having the litigation in one forum for consistency and efficiency.  *See Ansoumana v. Gristede's*

11

*Operating Corp.,* 201 F.R.D. 81, 89 (S.D.N.Y. 2001).  However, hybrid cases involve complex questions of law.

This case hinged on several questions of fact.  In particular, the parties disputed whether Defendant had knowledge that Plaintiffs and class members worked uncompensated overtime hours "off-the-clock" and the number of such uncompensated hours worked.  *See Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06 Civ. 4270, 2009 WL 5851465, at *4-5 (S.D.N.Y. Mar. 31, 2009) (approving attorneys' fees of 33% in case where parties disputed merits of plaintiffs' off-the-clock claims).  These factual disputes support approval of Class Counsel's attorneys' fee request.  *See Willix*, 2011 WL 754862, at *4  (granting attorneys' fees of 33 1/3% where settlement eliminated risk surrounding "fact-intensive nature of Plaintiffs' claims and Defendants' affirmative defenses"); *Reyes v. Buddha-Bar NYC*, No. 08 Civ. 2494, 2009 WL 5841177, at *4-5 (S.D.N.Y. May 28, 2009) (awarding fees of 33% of the fund in an off- the-clock case).  Additionally, given the number of claims – over 1,500 class members – and the questions of fact at issue, this factor supports approving Class Counsel's attorneys' fee request.

### 3.        Risk of Litigation

The risk of litigation is also an important factor in determining a fee award.  Uncertainty that an ultimate recovery will be obtained is highly relevant in determining the reasonableness of an award.  *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974), *abrogated by Goldberger*, 209 F.3d 43 (2d Cir. 2000).  "[D]espite the most rigorous and competent of efforts, success is never guaranteed."  *Id.* at 471.

Class and Plaintiff's Counsel undertook to prosecute this action without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of

tremendous risk.   Kessler Decl. ¶ 140; Swartz Decl. ¶ 20.  Class cases of this type are, by their very nature, complicated and time-consuming.   Kessler Decl. ¶ 140; Swartz Decl. ¶ 20.  Any lawyer undertaking representation of large numbers of affected employees in such actions inevitably must be prepared to make a tremendous investment of time, energy, and resources. Kessler Decl. ¶ 140; Swartz Decl. ¶ 20.  Due also to the contingent nature of the customary fee arrangement, lawyers are asked to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind.   Kessler Decl. ¶ 140; Swartz Decl. ¶ 20.  Class and Plaintiff's Counsel stood to gain nothing in the event the case was unsuccessful.   Kessler Decl. ¶ 140; Swartz Decl. ¶ 20; *see also Johnson*, 2011 WL 4357376, at *17.

Moreover, the circumstances of this case presented hurdles to a successful recovery. Kessler Decl. ¶¶ 46-52.   The overtime claim hinged on Plaintiffs' ability to prove that Defendant knowingly required Plaintiffs to work overtime while off-the-clock.  *Id*. ¶¶ 20, 41, 48.  This fact-intensive inquiry would require the testimony of numerous former Marketing Representatives and Specialists and Affinity's supervisors and staff.  *See, e.g.*, *Brunson v. City of New York*, Nos. 94 Civ. 4507 & 5632, 2000 WL 1876910, at *4 (S.D.N.Y. Dec. 22, 2000) (where class counsel "faced significant obstacles . . . verifying . . . tasks performed by individual plaintiffs," class counsel was entitled to a 50% premium for their achievement of a settlement).

### 4.        Quality of Representation

"To determine the 'quality of the representation,' courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit."  *Taft v. Ackermans*, No. 02 Civ. 7951, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007) (citing *In re Global Crossing*, 225 F.R.D. at 467).

13

Defendant agreed to pay a total of $2,500,000 to settle this litigation. Class and Plaintiff's Counsel have substantial experience prosecuting and settling large-scale wage and hour class and collective actions.[5] "[Plaintiff's] Counsel are experienced class action employment lawyers and have extensive experience prosecuting and settling wage and hour class actions."[6]

---

[5]    Shulman Kessler LLP has substantial experience as Class Counsel. *See Salomon v. Adderley Indus.*, No. 11 Civ. 6043, 2012 WL 716197 (S.D.N.Y. Mar. 6, 2012) (matter on behalf of approximately 400 cable technicians conditionally certified as a collective action); *Garcia v. Pancho Villa's Huntington Vill., Inc.*, No. 09 Civ. 486, 2011 WL 6287932, at *6 (E.D.N.Y. Dec. 15, 2011) ("[T]he Court takes notice of the fact that plaintiffs' counsel, Shulman Kessler LLP, are experienced labor and employment litigators who have successful represented employees in numerous collective and class action lawsuits."); *Avila v. Northport Car Wash*, Inc., 774 F. Supp. 2d 450 (E.D.N.Y. 2011) (matter on behalf of car wash laborers conditionally certified as a collective action); *Moore v. Eagle Sanitation, Inc.*, 276 F.R.D. 54 (E.D.N.Y. 2011) (matter on behalf of sanitation truck drivers conditionally certified as a collective action); *Cano v. Four M Food Corp.*, No. 08 Civ. 3005, 2009 WL 5710143 (E.D.N.Y. Feb. 3, 2009) (matter on behalf of a class of grocery store workers conditionally certified as a collective action); *Cruz v. Lyn-Rog Inc.*, 754 F. Supp. 2d 521 (E.D.N.Y. 2010) (matter on behalf of car wash laborers conditionally certified as a collective action); *Pineda v. Jim-Mar Consultants, Inc.*, 741 F. Supp. 2d 398 (E.D.N.Y. 2010) (matter on behalf of laborers in a granite and marble yard conditionally certified as a collective action), *modified*, 741 F. Supp. 2d 403.

[6]    Outten & Golden LLP has served as class counsel in over twenty wage and hour class actions in the last three years, including: *Matheson v. T-Bone Restaurant, LLC*, No. 09 Civ. 4214, 2011 WL 6402303 (S.D.N.Y. Sept. 13, 2011) (same); *Reyes v. Altamarea Group, LLC*, No. 10 Civ. 6451, 2011 WL 4599773 (S.D.N.Y. Jun. 3, 2011) (granting preliminary approval of class settlement and appointing O&G class counsel); *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 1872405 (S.D.N.Y. May 17, 2011) (same); *Sand v. Greenberg*, No. 08 Civ. 7840, 2011 WL 1338196 (S.D.N.Y. Mar. 22, 2011) (same); *Dorn v. Eddington Security, Inc.*, No. 08 Civ. 10271, 2011 WL 382200 (S.D.N.Y. Jan. 21, 2011) (same); *Willix v. Healthfirst, Inc*., No. 07 Civ. 1143, 2010 WL 5509089 (E.D.N.Y. Nov. 29, 2010) (same); *Campos v. Goode*, No. 10 Civ. 224, 2010 WL 5508100 (S.D.N.Y. Nov. 29, 2010); *deMunecas v. Bold Food, LLC*, No. 09 Civ. 440, 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010); *Diaz v. Eastern Locating Service Inc.*, No. 10 Civ. 4082, 2010 WL 2945556 (S.D.N.Y. July 22, 2010) (same); *Torres v. Gristede's Operating Corp.*, Nos. 04 Civ. 2216, 08 Civ. 8531, 08 Civ. 9627, 2010 WL 2572937 (S.D.N.Y. Jun. 1, 2010); *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2009 WL 6615729 (S.D.N.Y. May 11, 2010) (same); *McMahon v. Olivier Cheng Catering and Events, LLC*, No. 08 Civ. 8713, 2009 WL 6583141 (S.D.N.Y. Dec. 29, 2009) (same); *Danieli v. International Business Machines Corp.*, No. 08 Civ. 3688, 2009 WL 6583144 (S.D.N.Y. Nov. 16, 2009); *Hughes v. Getronics Wang LLC*, No. 07 Civ 10356, 2009 WL 6540166 (S.D.N.Y. Oct. 21, 2009); *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2009 WL 6490085 (E.D.N.Y. Oct. 1, 2009)

Class Counsel's skill and experience were directly responsible for the favorable settlement and weigh in favor of granting the requested fees. Kessler Decl. ¶ 134; *Velez*, 2007 WL 7232783, at *7 (holding that "Lead Counsel's experience representing plaintiffs in class actions" supported a 33.33% contingency fee award); *Frank v. Eastman Kodak, Co.*, 228 F.R.D. 174, 189 (W.D.N.Y. 2005) (citing plaintiffs' counsel's experience as one factor supporting an attorneys' fee award of 40% of the fund).

In addition, if the Court approves the settlement, Class and Plaintiff's Counsel will have successfully fought off an aggressive and determined objection, which, if successful, would have cost the Class the benefit of the settlement and required them to wait until the case was litigated to conclusion (which is against the wishes of the many class members who have contacted Class Counsel). Kessler Decl. ¶¶ 129-131; Swartz Decl. ¶¶ 21. *See Olick v. Parker & Parsley Petroleum Co.*, 145 F.3d 513, 516 (2d Cir. 1998) (no abuse of discretion where district court awarded fees to class counsel for time spent defending settlement).

### 5.        Fee in Relation to the Settlement

Class Counsel's thirty-three percent (33%) fee request is "consistent with the norms of class litigation in this circuit." *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008). Recently, in *Willix*, the court awarded one-third of a $7,675,000 fund in attorneys' fees to Plaintiff's Counsel in a similar class and collective action lawsuit involving overtime claims brought by Medicaid marketing representatives. 2011 WL 754862, at *6. In *Khait,* your Honor awarded 33% to Plaintiff's Counsel of a $9,250,000 fund in

---

(same); *Prasker v. Asia Five Eight LLC*, No. 08 Civ. 5811, 2009 WL 6583143 (S.D.N.Y. Sept. 22, 2009); *O'Dell v. AMF Bowling Centers, Inc.*, No. 09 Civ. 759, 2009 WL 6583141 (S.D.N.Y. Sept. 18, 2009); *Westerfield v. Washington Mutual Bank*, Nos. 06 Civ. 2817, 08 Civ. 287, 2009 WL 6490084 (E.D.N.Y. June 26, 2009) (same); *Reyes v. Buddha-Bar NYC*, No. 08 Civ. 2494, 2009 WL 5841176 (S.D.N.Y. Jan. 29, 2009).

a nationwide class and collective action lawsuit.  2010 WL 2025106, at *1, 9.  Courts in this Circuit routinely grant requests of one-third of substantial settlement funds.[7]

Courts also consider the size of the settlement to ensure that the percentage awarded does not constitute a "windfall."  *See, e.g.*, *In re Gilat Satellite Networks, Ltd.*, No. 02 Civ. 1510, 2007 WL 2743675, at *16 n.41 (E.D.N.Y. Sept. 18, 2007).  "[T]he percentage used in calculating any given fee award must follow a sliding-scale and must bear an inverse relationship to the amount of the settlement."  *Id.* (quoting *In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689, 2003 WL 22244676, at *6 (S.D.N.Y. Sept. 29, 2003)) (internal quotation marks omitted).  Where the size of the fund is relatively small, courts typically find that requests for a greater percentage of the fund are reasonable.  *See, e.g.*, *id.* (finding a 30% fee would not constitute a windfall "given the modest size of the [$20 million] settlement").  Here, the 2.5 million dollar settlement is well within the range of settlement size where an award of 33 1/3% of the fund is appropriate.

### 6.        Public Policy Considerations

Public policy considerations weigh in favor of granting Class Counsel's requested fees. In rendering awards of attorneys' fees, "the Second Circuit and courts in this district also have taken into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation."  *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d at 399.  The FLSA and New York Labor Law ("NYLL") are both remedial statutes

---

[7]      *See, e.g.*, *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198, at *8-9 (May 11, 2010) (awarding class counsel 33% of $6 million settlement fund in FLSA and multi-state wage and hour case); *Mohney*, 2009 WL 5851465, at *5 (awarding 33% of $3,265,000 fund in FLSA and NYLL case); *Stefaniak v. HSBC Bank USA, N.A.*, No. 05 Civ. 720S, 2008 WL 7630102, at *3 (W.D.N.Y. June 28, 2008) (awarding 33% of $2.9 million fund in FLSA and NYLL case); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) (awarding 33 1/3% of a $11.5 million fund); *Cohen v. Apache Corp.*, No. 89 Civ. 76, 1993 WL 126560, at *1 (S.D.N.Y. Apr. 21, 1993) (awarding 33 1/3% of the $6.75 million fund).

designed to protect the wages of workers.  *See A.H. Phillips v. Walling*, 324 U.S. 490, 493 (1945) (recognizing the FLSA's objective, which is ensuring that every employee receives "a fair day's pay for a fair day's work"); *Samiento v. World Yacht, Inc., et al.*, 883 N.E.2d 990, 994 (N.Y. 2008) (noting the "remedial nature" of the NYLL).  Adequate compensation for attorneys who protect those rights by taking on such litigation furthers the remedial purpose of those statutes.  *See Khait*, 2010 WL 2025106, at *8 ("Attorneys who fill the private attorney general role must be adequately compensated for their efforts.  If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk."); *Sand*, 2010 WL 69359, at *3 ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected.").

Courts have recognized that fee awards in cases like this serve the dual purposes of encouraging "private attorneys general" to seek redress for violations and discouraging future misconduct of a similar nature.  *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980); *Johnson*, 2011 WL 4357376, at *20; *Khait*, 2010 WL 2025106, at *8.  Class actions are also an invaluable safeguard of public rights.  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985); *J.I. Case Co. v. Borak*, 377 U.S. 426, 433-34 (1964).  Particularly, an award of attorneys' fees ensures that "plaintiffs' claims [will] likely . . . be heard."  *Frank*, 228 F.R.D. at 189.  If courts denied sufficient attorneys' fees "no attorneys . . . would likely be willing to take on . . . small-scale class actions[.]"  *Id.*; *Johnson*, 2011 WL 4357376, at *19.

Public policy considerations therefore weigh strongly in favor of the fee request.

## III.   THE LODESTAR CROSS CHECK FURTHER SUPPORTS AN AWARD TO CLASS COUNSEL OF ONE-THIRD OF THE SETTLEMENT FUND

Following *Goldberger*, the trend in the Second Circuit has been to apply the percentage method and loosely use the lodestar method as a "baseline" or as a "cross check."  *Goldberger*,

209 F.3d at 50.   The Second Circuit "encourages the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage."   *Id.*; *see also Reyes*, 2011 WL 4599822, at *8.   As part of the cross check, the lodestar is determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate.   *Hicks v. Stanley*, No. 01 Civ. 10071, 2005 WL 2757792, at *8 (S.D.N.Y. Oct. 24, 2005).   Courts then consider whether a multiplier is warranted based on factors, such as: (1) the contingent nature of the expected compensation for services rendered; (2) the consequent risk of non-payment viewed as of the time of filing the suit; (3) the quality of representation; and (4) the results achieved.   *In re Boesky Sec. Litig.*, 888 F. Supp. 551, 562 (S.D.N.Y. 1995); *see also Goldberger*, 209 F.3d at 47; *Savoie*, 166 F.3d at 460; *Parker*, 2010 WL 532960, at *2.   In calculating the lodestar for cross check purposes, the "hours documented by counsel need not be exhaustively scrutinized by the district court."   *Goldberger*, 209 F.3d at 50.

Here, Class Counsel seeks a lodestar multiplier of 3.0 on their time spent litigating and settling the case.   This is well within the range awarded by courts in this Circuit.   Class Counsel spent approximately 868 hours litigating and settling this matter.   Kessler Decl. ¶ 136. Including the time Plaintiff's Counsel spent assisting with the settlement approval process and opposing the objection, more than 390 hours and $141,780 in lodestar, the requested multiplier is 2.0.   Swartz Decl. ¶¶ 14, 17.   The time spent by Class and Plaintiff's Counsel is described in the Declarations of Troy L. Kessler and Justin M. Swartz and the summaries of Class and Plaintiff's Counsel's contemporaneous time records attached thereto.   Kessler Decl. ¶¶ 136-37, Ex. MM (Contemporaneous Time Records), Ex. NN (Summary of Time); Swartz Decl. ¶¶ 14-15; Ex. D (Summary of Time), Ex. E (Contemporaneous Time Records).

Courts regularly award lodestar multipliers from two to six times lodestar.  *See In re Lloyd's Am. Trust Fund Litig.*, 2002 WL 31663577, at *27 (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit"); *see also Buccellato v AT&T Operations, Inc.*, No. 10 Civ. 463, 2011 WL 4526673 (N.D. Cal.) (June 30, 2011) (approving multiplier of 4.3 in wage and hour case); *Khait*, 2010 WL 2025106, at *7-8 (awarding multiplier of 3.3 in wage and hour case); *Maley*, 186 F. Supp. 2d at 371 (the "modest multiplier of 4.65 is fair and reasonable"); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (awarding multiplier of 3.97 times lodestar); *In re RJR Nabisco, Inc. Sec. Litig.*, MDL No. 818, No. 88 Civ. 7905, 1992 WL 210138, at *6-8 (S.D.N.Y. Aug. 24, 1992) (awarding multiplier of 6); *Rabin v. Concord Assets Grp., Inc.*, No. 89 Civ. 6130, 1991 WL 275757, at *2 (S.D.N.Y. Dec. 19, 1991) (awarding multiplier of 4.4).[8]

## IV.   CLASS COUNSEL ARE ENTITLED TO REIMBURSEMENT OF COSTS UNDER THE SETTLEMENT AGREEMENT

Class Counsel request reimbursement of $7,707.10 in out-of-pocket costs to be paid from the Fund.  "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients."  *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (internal quotation marks omitted).  The costs, incurred by Class Counsel, include the filing fee, process servvice, court reporters, postage, transportation and photocopies.  Kessler Decl. ¶ 136; Swartz Decl. ¶ 14.  These costs are of the type routinely awarded by courts.[9]

---

[8]   Plaintiff's Counsel was class counsel in the *Buccellato* and *Khait* cases and has verified the accuracy of these multipliers.  Swartz Decl. ¶ 6.

[9]   *See Arbor Hill*, 369 F.3d at 98 ("[I]n the context of a fee-shifting provision, the charges for such online research may properly be included in a fee award"); *LeBlanc-Sternberg v.*

V. __CONCLUSION__

For the reasons set forth above, Plaintiff respectfully requests that the Court grant his Motion for Approval of Attorneys' Fees and Reimbursement of Expenses, and enter an Order: (i) awarding attorneys' fees in the amount of $833,333.33, which represents one-third of the Fund; and (ii) reimbursing $7,707.10 in out-of-pocket costs that Class Counsel incurred in this action.

Dated: Melville, New York
          April 3, 2012                              Respectfully submitted,

                                                     **SHULMAN KESSLER LLP**
                                                     By:

                                                     /s/ Troy L. Kessler
                                                     Troy L. Kessler

                                                     **SHULMAN KESSLER LLP**
                                                     Troy L. Kessler
                                                     Marijana F. Matura
                                                     510 Broadhollow Road, Suite 110
                                                     Melville, New York 11747
                                                     Telephone: (631) 499-9100

                                                     *Attorneys for Plaintiff and the Class*

                                                     **OUTTEN & GOLDEN LLP**
                                                     Justin M. Swartz
                                                     Jennifer L. Liu
                                                     3 Park Avenue, 29th Floor
                                                     New York, New York 10016
                                                     Telephone:  (212) 245-1000

                                                     *Attorneys for Plaintiffs*

---

*Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (holding that expenses such as photocopying, telephone, computerized legal research are recoverable whether as costs or fees); *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (upholding award of costs in Section 1983 action for service of summons and complaint, postage, copying costs, hotel bills, meals, and messenger service, among other items); *Lewis v. Triborough Bridge & Tunnel Auth.*, No. 97 Civ. 0607, 2001 WL 1898318, at *10 (S.D.N.Y. Aug. 6, 2001) (awarding plaintiffs  hotel and meal costs and court reporter fees in Title VII and NYSHRL action); *O'Grady v. Mohawk Finishing Prods., Inc.*, No. 96 Civ.1945, 1999 WL 30988, at *23-24 (N.D.N.Y. Jan. 15, 1999) (awarding plaintiff lodging, food, and transportation expenditures).