**SHULMAN KESSLER LLP**
Troy L. Kessler
Marijana F. Matura
510 Broadhollow Road, Suite 110
Melville, New York 11747
Telephone: (631) 499-9100

**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Jennifer L. Liu
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **KIM MORRIS, MELISSA ADLIN and JORGE GUADRON, on behalf of themselves and all others similarly situated,**<br><br>**Plaintiffs,**<br><br>**-against-**<br><br>**AFFINITY HEALTH PLAN, INC.,**<br><br>**Defendant.** | **No. 09 Civ. 1932 (ALC)** |

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR CERTIFICATION OF THE SETTLEMENT CLASS AND FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

BACKGROUND ................................................................................................................... 1

    I.    Procedural History ................................................................................................ 1

    II.    Discovery and Litigation ...................................................................................... 2

    III.    Settlement Negotiations ........................................................................................ 3

SUMMARY OF THE SETTLEMENT TERMS AND ADMINISTRATION ............................ 4

    I.    The Settlement Fund ............................................................................................ 4

    II.    Releases ................................................................................................................ 4

    III.    Allocation Formula .............................................................................................. 4

    IV.    Class Action Fairness Act Notice ........................................................................ 5

    V.    Settlement Claims Administrator ......................................................................... 5

ARGUMENT ......................................................................................................................... 5

    I.    The Settlement Class Meets the Legal Standard for Class Certification ........................ 5

        A.    Numerosity ................................................................................................ 6

        B.    Commonality .............................................................................................. 6

        C.    Typicality ................................................................................................... 8

        D.    Adequacy ................................................................................................... 9

        E.    Certification is Proper Under Rule 23(b)(3) ...................................................... 10

    II.    The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be Approved in All Respects ............................................................................................... 11

        A.    The Proposed Settlement Is Procedurally Fair .................................................. 12

            1.    The Parties Reached the Settlement Through Arm's-Length Negotiations  12

2. Objector Morris Alleges that Class Counsel Violated Various Ethical Rules But Does Not Allege That The Settlement Negotiations Were Collusive.. 14

B. The Proposed Settlement Is Substantively Fair ..................................... 16

1. Litigation Through Trial Would Be Complex, Costly, and Long (*Grinnell* Factor 1) ....................................................................... 17

2. The Reaction of the Class Has Been Very Positive (*Grinnell* Factor 2) .... 18

3. Discovery Has Advanced Far Enough to Allow the Parties to Responsibly Resolve the Case (*Grinnell* Factor 3) ........................................ 19

4. Plaintiff Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5) ....................................................................... 21

5. Establishing a Class and Maintaining It Through Trial Would Not Be Simple (*Grinnell* Factor 6) ................................................. 22

6. Defendant's Ability to Withstand a Greater Judgment Is Not Determinative (*Grinnell* Factor 7) ....................................................... 23

7. The Settlement Fund Is Substantial in Light of the Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9) .................... 23

C. Objector Morris's Remaining Objections Should Be Overruled ....................... 28

III. Approval of the FLSA Settlement Is Appropriate Under Federal Law ...................... 29

CONCLUSION ........................................................................ 30

## TABLE OF AUTHORITIES

CASES                                                                                    PAGE(S)

*Alleyne v. Time Moving & Storage Inc.*,
    264 F.R.D. 41 (E.D.N.Y. 2010) ................................................................20, 23

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ................................................................................10, 11

*Anderson v. Mt. Clemens Pottery Co.*,
    328 U.S. 680 (1946) ........................................................................................21

*Ansoumana v. Gristede's Operating Corp.*,
    201 F.R.D. 81 (S.D.N.Y. 2001) ......................................................................29

*In re AOL Time Warner, Inc. Sec. Litig.*,
    No. 02 Civ. 5575, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ................................13

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato*, 236 F.3d 78 ................ passim

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
    No. 07 Civ. 2207, 2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010) ............................18

*Cagan v. Anchor Sav. Bank FSB*,
    No. 88 Civ. 3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990) ...................24, 29, 30

*Castagna v. Madison Square Garden, L.P.*,
    No. 09 Civ. 10211, 2011 WL 2208614 (S.D.N.Y. June 7, 2011) ............................23

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ...................................................................... passim

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995) ................................................................................6

*County of Suffolk v. Long Island Lighting Co.*,
    907 F.2d 1295 (2d Cir.1990) ............................................................................16

*Cruz v. Dollar Tree Stores, Inc.*,
    Nos. 07 Civ. 2050 & 4012, 2011 WL 2682967 (N.D. Cal. July 8, 2011) ..............26

*In re Currency Conversion Fee Antitrust Litig.*,
    No. 01 MDL 1409, 2006 WL 3247396 (S.D.N.Y. Nov. 8, 2006) ............................16

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001) ........................................................................ passim

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 5979 (1993) ......................................................................................................28

*Davis v. J.P. Morgan Chase & Co.*,
  No. 01 Civ. 6492, 2011 WL 4793835 (W.D.N.Y. Oct. 11, 2011) .....................................18, 23

*deMunecas v. Bold Food, LLC*,
  No. 09 Civ. 440, 2010 WL 3322580 (S.D.N.Y Aug. 23, 2010) ........................................13, 30

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006) ...............................................................................................5

*Diaz v. E. Locating Serv.*,
  No. 10 Civ. 4082, 2010 WL 5507912 (S.D.N.Y. Nov. 29, 2010) .........................................20

*Dorn v. Eddington Sec., Inc.*,
  No. 08 Civ. 10271, 2011 WL 382200 (S.D.N.Y. Jan. 21, 2011) ..........................................4

*In re Drexel Burnham Lambert Grp., Inc.*,
  960 F.2d 285 (2d Cir. 1992) ................................................................................................9

*Dupler v. Costco Wholesale Corp.*,
  705 F. Supp. 2d 231 (E.D.N.Y. 2010) ................................................................................24

*In re Dynex Capital, Inc. Sec. Litig.*,
  No. 05 Civ. 1897, 2011 WL 2581755 (S.D.N.Y. Apr. 29, 2011) .....................................10, 29

*Espinoza v. 953 Assocs. LLC*,
  No. 10 Civ. 5517, 2011 WL 5574895 (S.D.N.Y. Nov. 16, 2011) .......................................7, 8

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
  No. 05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) .........................................12

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005) ................................................................................ passim

*Garza v. Chicago Transit Auth.*,
  No. 00 Civ. 438, 2001 WL 503036 (N.D. Ill. May 8, 2001) ................................................26

*In re General Motors Corp. Engine Interchange Litigation*,
  594 F.2d 1106 (7th Cir. 1979). ..........................................................................................15

*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982) ...........................................................................................................6

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
  No. 07 Civ. 10588, 2011 WL 5244707 (S.D.N.Y. Nov. 2, 2011) ..........................................13

*Gilliam v. Addicts Rehab. Ctr. Fund*,
   No. 05 Civ. 3452, 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ............................................28

*In re Global Crossing Sec. and ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................................................14

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000)..................................................................................................17

*Grant v. Bethlehem Steel Corp.*,
   823 F.2d 20 (2d Cir. 1987)..................................................................................................19

*Green v. Wolf Corp.*,
   406 F.2d 291 (2d Cir. 1968)................................................................................................11

*Gustafson v. Bell Atlantic Corp.*,
   171 F. Supp. 2d 311 (S.D.N.Y. 2001).................................................................................27

*In re Ira Haupt & Co.*,
   304 F. Supp. 917 (S.D.N.Y. 1969) .....................................................................................21

*In re Ivan F. Boesky Sec. Litig.*,
   948 F.2d 1358 (2d Cir. 1991)..............................................................................................16

*Johnson v. Brennan*,
   No. 10 Civ. 4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ................................. passim

*Kamean v. Local 363, Int'l Bhd. of Teamsters*,
   109 F.R.D. 391 (S.D.N.Y. 1986) ..........................................................................................6

*Khait v. Whirlpool Corp.*,
   No. 06 Civ. 6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) ........................................21

*Kincade v. General Tire and Rubber Co.*,
   635 F.2d 501 (5th Cir. 1981) ..............................................................................................16

*In re Lloyd's American Trust Fund Litig.*,
   No. 96 Civ.1262, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ........................................19

*Lynn's Food Stores, Inc. v. United States*,
   679 F.2d 1350 (11th Cir. 1982) ..........................................................................................30

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002)..................................................................................18

*Marisol A. by Forbes v. Giuliani*,
   126 F.3d 372, 376 (2d Cir. 1997) .........................................................................................8

*Marlo v. United Parcel Serv., Inc.*,
   639 F.3d 942 (9th Cir. 2011) ................................................26

*Martens v. Smith Barney, Inc.*,
   190 F.R.D. 134 (S.D.N.Y. Dec. 2, 1999)..........................................9, 21

*Matheson v. T-Bone Rest., LLC*,
   No. 09 Civ. 4214, 2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011)....................20, 30

*May v. Wal-Mart Stores, Inc.*,
   751 F. Supp. 2d 946 (E.D. Ky. 2010) ...............................................27

*Maywalt v. Parker & Parsley Petroleum Co.*,
   155 F.R.D. 494 (S.D.N.Y. 1994) ...................................................16

*Maywalt v. Parker & Parsley Petroleum Co.*,
   864 F. Supp. 1422 (S.D.N.Y. 1994)................................................16

*McBean v. City of New York*,
   228 F.R.D. 487 (S.D.N.Y. 2005) ...................................................10

*In re Monster Worldwide, Inc. Sec. Litig.*,
   251 F.R.D. 132 (S.D.N.Y. July 14, 2008)............................................9

*Morris v. Affinity Health Plan, Inc.*,
   No. 09 Civ. 1932, 2011 WL 6288035 (S.D.N.Y. Dec. 15, 2011)....................1, 5, 13

*In re Nasdaq*,
   187 F.R.D. 465 (S.D.N.Y. 1998) ...................................................19

*Nobles v. State Farm Mut. Auto. Ins. Co.*,
   No. 10 Civ. 4175, 2011 WL 3794021 (W.D. Mo. Aug. 25, 2011)...........................8

*Odom v. Hazen Transport, Inc.*,
   275 F.R.D. 400 (W.D.N.Y. 2011)...................................................23

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ......................................................24

*In re PaineWebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) ...................................................21

*In re Pfizer Inc. Sec. Litig.*,
   04 Civ. 9866 & 05 MD 1688, 2012 WL 1059671 (S.D.N.Y. Mar. 29, 2012)............... passim

*Prasker v. Asia Five Eight LLC*,
   No. 08 Civ. 5811, 2010 WL 476009 (S.D.N.Y. Jan. 6, 2010)...............................13

vii

*Ramos v. SimplexGrinnell LP*,
    796 F. Supp. 2d 346 (E.D.N.Y. Jun. 21, 2011)........................................................7

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
    237 F.R.D. 26, 31 (E.D.N.Y. 2006) ...................................................................6

*Reyes v. Altamarea Grp., LLC*,
    No. 10 Civ. 6451, 2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) .....................9, 12

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993)................................................................................8

*Rodriguez et al. v. Almighty Cleaning, Inc.*,
    784 F.Supp.2d 114 (E.D.N.Y. 2011) ...............................................................27

*Ross v. RBS Citizens, N.A.*,
    667 F.3d 900 (7th Cir. 2012) .............................................................................7

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*,
    659 F.3d 234 (2d Cir. 2011)...........................................................................22

*Stavrides v. Mellon*,
    60 F.R.D. 634 (W.D. Pa. 1973) .......................................................................15

*Toure v. Cent. Parking Sys. of N.Y.*,
    No. 05 Civ. 5237, 2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007) .....................8, 9

*Ugas v. H&R Block Enters., LLC*,
    No. 09 Civ. 6510, 2011 WL 3439219 (C.D. Cal. Aug. 4, 2011) .......................8

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011)......................................................................................7

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)....................................................................11, 12, 13

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004)...........................................................................19

*White v. Experian Info. Solutions, Inc.*,
    803 F. Supp. 2d 1086 (C.D. Cal. 2011) .........................................................15

*Willix v. HealthFirst, Inc.*,
    No. 07 Civ. 1143, 2009 WL 6490087 (E.D.N.Y. Dec. 3, 2009) .................. passim

*Wright v. Stern*,
    553 F. Supp. 2d 337 (S.D.N.Y. 2008)..................................................18, 21, 29

*Youngblood v. Family Dollar Stores, Inc.*,
   No. 09 Civ. 3176, 2011 WL 4597555 (S.D.N.Y. Oct. 4, 2011) ...............................................7

**STATUTES**

28 U.S.C. § 1715(a) .............................................................................................................5

28 U.S.C. § 1715(d) .............................................................................................................5

**OTHER AUTHORITIES**

Fed. R. Evid. 702 ...............................................................................................................28

Fed. R. Civ. P. 23 ........................................................................................................ passim

Kate Pickert, *The First Victims of Health Care Reform* .................................................23

N.Y. State Bar Assoc. Cmt. [12] of Preamble to N.Y. Rules of Prof. Conduct (2009)...........14, 29

## INTRODUCTION

Class Representative Jorge Guadron submits this Memorandum of Law in support of his Motion for Certification of the Settlement Class and Final Approval of the Class Action Settlement ("Motion for Final Approval"). The parties' $2,500,000 settlement of this wage and hour class action satisfies all of the criteria for final approval. Plaintiff seeks an order: (1) certifying the settlement class; and (2) approving as fair and adequate the class-wide settlement of this action, as set forth in the Settlement Agreement, Release, and Waiver ("Settlement Agreement") attached as Exhibit S to the Declaration of Troy L. Kessler ("Kessler Decl.").[1]

On December 15, 2011, the Court took the first step in the settlement approval process by granting preliminary approval, conditionally certifying the settlement class, directing that notice be mailed to Class Members, and setting the date for the final fairness hearing for April 17, 2012. *Morris v. Affinity Health Plan, Inc.*, No. 09 Civ. 1932, 2011 WL 6288035 (S.D.N.Y. Dec. 15, 2011). The members of the class have been notified of the terms of the settlement, the monetary relief, the allocation formula, and their right to opt out of or object to the settlement. Out of a total of 1,501 individuals, only 16 Class Members have opted out of the settlement – less than 1.1% – and only one Class Member has filed an objection. Kessler Decl. ¶ 132. With such substantial support, and for the reasons stated below, the Court should protect the interests of the "silent majority" and grant final approval.[2]

## BACKGROUND

### I.   Procedural History

Kim Morris, Melissa Adlin, and Jorge Guadron, former Marketing Representatives and

---

[1]     Unless otherwise indicated, all exhibits are attached to the Kessler Decl.
[2]     Class Counsel has filed a Motion for Approval of Attorneys' Fees and Reimbursement of Expenses and a Motion for Approval of Service Awards simultaneously with this Motion.

Marketing Specialists ("Marketing Representatives") of Affinity Health Plan, Inc. ("Affinity" or "Defendant"), filed this case on March 3, 2009 alleging that Affinity violated the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") by allowing them to work off-the-clock in excess of 40 hours per workweek without overtime premium pay.  They brought their case as a putative class action under Federal Rule of Civil Procedure 23 ("Rule 23") and as a collective action under 29 U.S.C. § 216(b).  Kessler Decl. ¶ 23.

After Plaintiffs filed a motion pursuant to 29 U.S.C. § 216(b) seeking conditional certification of a collective action under the FLSA, the parties stipulated to conditional certification of a collective action for Marketing Representatives in Affinity's South Region,[3] where all of the Plaintiffs and Opt-Ins at that time had worked.  *Id.* ¶ 32.  In November 2009, the parties entered into the first of several agreements to toll the statute of limitations for Marketing Representatives in Affinity's North Region.  *Id.*  In March 2010, notice issued to 438 Marketing Representatives, 45 of them opted in, increasing the total number of Plaintiffs and Opt-Ins to 64. *Id.* ¶ 34.

## II.   **Discovery and Litigation**

The parties engaged in substantial discovery before agreeing to resolve this case.  *Id.* ¶¶ 25, 36-44.  Class Counsel conducted an extensive investigation, including interviews of more than 100 employees; obtaining and reviewing documents from them, and obtaining supportive declarations.  *Id.* ¶¶ 40-41.  On November 8, 2010, the parties agreed to attend mediation.  *Id.* ¶ 37.  Defendant produced personnel files, time and pay records, and Affinity cell phone records for a sample of eleven Plaintiffs and Opt-Ins, and deposed eight of them.  *Id.* ¶¶ 39, 43.

---

[3]     Affinity has two regions in the State of New York, the North Region, encompassing New York, Bronx, Westchester, Orange, Putnam, and Rockland Counties, and the South Region, encompassing Richmond, Queens, Brooklyn, Nassau, and Suffolk Counties.  *Id.* ¶ XX.

Plaintiffs deposed three Affinity corporate witnesses, including a senior manager, a regional manager, and a former supervisor.  *Id.* ¶ 44.

### III.    Settlement Negotiations

On April 21, 2011, the parties participated at a mediation conducted by Ruth D. Raisfeld, Esq., a well-known employment and class action mediator.  *Id.* ¶ 53.  After twelve hours of negotiations, the parties agreed to the material terms of a settlement and signed a memorandum of understanding.  *Id.* ¶ 67.  Each of the named Plaintiffs, including the objector, Kim Morris ("Objector Morris") attended the mediation and orally agreed to the settlement terms before the lawyers executed the memorandum of understanding.  *Id.* ¶ 67; Guadron Decl. ¶¶ 33, 35.  Five days after the mediation, Objector Morris sent an email thanking Class Counsel stating, "I am most confident with our decision to have you and your office represent us in this case."  Ex. P (Email from Kim Morris, dated Apr. 26, 2011).  Over the next three months, the parties negotiated the terms of a formal Joint Stipulation of Settlement and Release ("Settlement Agreement") and on or around July 20, 2011, agreed on the final terms.  Kessler Decl. ¶ 85.  Plaintiffs Jorge Guadron ("Plaintiff") and Melissa Adlin ("Opt-Out Adlin") signed the Settlement Agreement, as did Affinity.  *Id.* ¶¶ 91, 96.  Opt-Out Adlin subsequently sought to "withdraw" her signature.  Objector Morris refused to sign the Settlement Agreement.[4]  *Id.* ¶ 98.

---

[4]    Class Counsel made numerous attempts to accommodate Objector Morris's schedule so that she would be able to review the finalized Settlement Agreement.  *Id.* ¶¶ 90, 98, 107.  After reviewing the Settlement Agreement, Objector Morris refused to sign the Settlement Agreement, refused to authorize Class Counsel to accept or reject it, and accused Class Counsel of wrongdoing.  *Id.* At a subsequent meeting with Objector Morris and her new counsel, she demanded additional money for herself and suggested that she would sign the settlement agreement if Class Counsel agreed.  Decl. of Steven Shulman ("Shulman Decl.") ¶ 14.  Class Counsel refused.  *Id.*

## SUMMARY OF THE SETTLMENT TERMS AND ADMINISTRATION

### I.     The Settlement Fund

The Settlement Agreement creates a fund of $2,500,000.00 ("the Fund") that covers

attorneys' fees and costs, named plaintiff service payments, and the cost of administration.  Ex. S

(Settlement Agreement) §§ 3.1(A); § 1.16.  None of the Fund will revert to Defendant.  *Id.* §

3.4(G).  Defendant has already deposited the entire Fund into escrow.  Kessler Decl. ¶¶ 83, 114.

### II.    Releases

Individuals who worked as Marketing Representatives for Affinity between March 3,

2003 and April 15, 2011 ("Class Members") are eligible to participate.  Ex. S (Settlement

Agreement) § 1.3.  Plaintiffs and Class Members who had previously opted into the case will

release their FLSA and NYLL wage and hour claims by operation of the judgment. *Id.* §

3.6(A)(1).  Qualified Class Members who did not previously opt in will also release their FLSA

and NYLL wage and hour claims by endorsing a settlement check.  *Id.* § 3.6(A)(2).  All

Qualified Class Members who do not opt out of the settlement will released their NYLL (but not

FLSA) wage and hour claims.  *Id.* § 3.6(A)(3).

### III.   Allocation Formula

Each Class Member's award will be determined based on a formula that awards points

for weeks worked during various periods, with more points awarded to Class Members who

worked during the FLSA period and who joined the case before May 26, 2010.  Ex. S

(Settlement Agreement) § 3.4; *see also Dorn v. Eddington Sec., Inc.,* No. 08 Civ. 10271, 2011

WL 382200, at *4 (S.D.N.Y. Jan. 21, 2011) (awarding extra point to those who worked during

the FLSA period).  No Class Member objected to the allocation formula.  Kessler Decl. ¶ 129.

IV.     **Class Action Fairness Act Notice**

On August 29, 2011, Defendant mailed notices to federal and state attorneys general pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(a).  Kessler Decl. ¶ 110. The 90-day CAFA waiting period during which the Court may not grant final approval ended on November 27, 2011.  *See* 28 U.S.C. § 1715(d).

V.      **Settlement Claims Administrator**

The parties retained Berdon Claims Administration LLC ("Berdon") as the settlement claims administrator.   Ex. S (Settlement Agreement) § 1.2; Kessler Decl. ¶ 80; Ex. LL (Decl. of Michael Rosenbaum ("Rosenbaum Decl.")) ¶¶ 2, 3.  After preliminary approval, Berdon calculated the minimum individual settlement awards.  On January 11, 2012, Berdon mailed the Court-approved notice ("Notice") to 1,501 Class Members and re-mailed those returned as undeliverable.  Rosenbaum Decl. ¶¶ 4-5.  Berdon will cut and mail the settlement checks upon final approval.  Ex. S (Settlement Agreement) § 3.4.

## ARGUMENT

I.      **The Settlement Class Meets the Legal Standard for Class Certification**

When faced with proposed class action settlements, courts first examine whether the settlement class should be certified.  *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006).  On December 15, 2011, the Court provisionally certified the settlement class.  *Morris*, 2011 WL 6288035.  Because all of the requirements of Federal Rule of Civil Procedure 23 ("Rule 23") are met, the Court should finally certify the following class: "All individuals who worked as Marketing Representatives or Marketing Specialists for Affinity Health Plan, Inc. at any time between March 3, 2003 and April 15, 2011."

A class action may be maintained if all of the prongs of Rule 23(a) and one of the prongs

of Rule 23(b) are satisfied.  Rule 23(a) requires: (1) a class so numerous that joinder of all

members is impracticable; (2) questions of law or fact common to the class; (3) claims of the

representative parties that are typical of the class claims; and (4) representative parties who will

fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  Rule 23(b)(3)

requires that common questions of law or fact predominate over any questions affecting only

individual members and that a class action is superior to other available methods of adjudication.

Fed. R. Civ. P. 23(a).  "Rule 23 is given liberal rather than restrictive construction, and courts are

to adopt a standard of flexibility" in evaluating class certification.  *Reade-Alvarez*

*v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (citation omitted).

### A.      Numerosity

Numerosity is presumed at 40 class members.  *Consol. Rail Corp. v. Town of Hyde Park*,

47 F.3d 473, 483 (2d Cir. 1995).  Here, numerosity is satisfied because there are 1,501 Class

Members.  Kessler Decl. ¶ 127; Rosenbaum Decl. ¶¶ 3-4.

### B.      Commonality

The proposed class satisfies the commonality requirement, the purpose of which is to test

"whether the named plaintiff's claim and the class claims are so interrelated that the interests of

the class members will be fairly and adequately protected in their absence."  *Gen. Tel. Co. of Sw.*

*v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  Claims need not be identical, they only must share

common questions of fact or law.  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 181 (W.D.N.Y.

2005).  There must be a "unifying thread" among the claims to warrant class certification.

*Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986).  Courts

construe the commonality requirement liberally.  *Frank*, 228 F.R.D. at 181.

This case involves common factual and legal issues, including (1) whether Defendant had

a policy of not paying Marketing Representatives overtime premium pay for hours worked over 40 in a workweek; (2) whether Defendant failed to pay Class Members premium overtime wages; and (3) whether Defendant knew or should have known that Class Members were working "off-the-clock."[5]  The alleged wage and hour violations – involving common operative facts stemming from corporate policies that affected Class Members in the same way – are sufficient to meet Rule 23(a)'s commonality factor.

The Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), does not precludes a commonality finding.  The weight of authority rejects the argument that *Dukes* bars certification in wage and hour cases.[6]  Moreover, post-*Dukes*, courts have routinely found commonality in off-the-clock cases where, as here, the plaintiffs alleged a common policy or practice required plaintiffs to meet quotas but enforced limits on the number of overtime hours

---

[5]     Ex. A (Am. Compl.) ¶¶ 37-46; Ex. B (Dep. of Kim Morris ("Morris Dep.") Tr. 111:14-17, 114: 8-13; Ex. C (Dep. of Melissa Adlin ("Adlin Dep.")) Tr. 81:14-19, 83:11-14; 93:21-25; 94:2-5; 97:2-5; Ex. D (Dep. of Jorge Guadron ("Guadron Decl.")) Tr. 86:23-25, 87:2-8; Ex. E (Dep. of Khalilah Garcia ("Garcia Dep")) Tr. 59:4-7; Ex. F (Dep. of Coreen Parilla ("Parilla Dep.")) Tr. 32:15-25, 33:2-10; Ex. G (Dep. of Alicia Fitzgerald ("Fitzgerald Dep.")) Tr. 37:2-3, 43:2, 44:8-11; Ex. H (Dep. of Edmundo Fernandez ("Fernandez Dep.")) Tr. 54:10-25; Ex. I (Dep. of Maxine Saulsberry ("Saulsberry Dep.")) Tr. 54:10-25.

[6]     *See, e.g.*, *Ross v. RBS Citizens, N.A.*, 667 F.3d 900, 908-09 (7th Cir. 2012) (finding *Dukes* inapplicable and holding that "unlawful policy denying employees earned-overtime compensation . . . is the common answer that potentially drives the resolution of this litigation"); *Espinoza v. 953 Assocs. LLC*, No. 10 Civ. 5517, 2011 WL 5574895, at *12 (S.D.N.Y. Nov. 16, 2011) (distinguishing *Dukes* in that plaintiffs' claims that "Defendants failed to pay minimum wages and overtime compensation as a result of certain policies and practices . . . alleged a common injury that is capable of class-wide resolution"); *Youngblood v. Family Dollar Stores, Inc.*, No. 09 Civ. 3176, 2011 WL 4597555 (S.D.N.Y. Oct. 4, 2011) ("Unlike the claims in *Wal-Mart*, Plaintiffs' NYLL claims 'do not require an examination of the subjective intent behind millions of individual employment decisions; rather, the crux of this case is whether the company-wide policies, as implemented, violated Plaintiffs' statutory rights.'"); *Ramos v. SimplexGrinnell LP*, 796 F. Supp. 2d 346, 356 (E.D.N.Y. Jun. 21, 2011) (noting that *Dukes* had "little bearing" where plaintiffs had adduced significant proof that defendant routinely failed to pay proper wages).

that could be reported.[7]  *See, e.g.*, *Ross*, 667 F.3d at 908-09 (7th Cir. 2012); *Nobles v. State Farm Mut. Auto. Ins. Co.*, No. 10 Civ. 4175, 2011 WL 3794021, at *4-5 (W.D. Mo. Aug. 25, 2011); *Espinoza*, 2011 WL 5574895, at *9; *Ugas v. H&R Block Enters., LLC*, No. 09 Civ. 6510, 2011 WL 3439219, at *9-10 (C.D. Cal. Aug. 4, 2011).  Objector Morris's speculation, without any supporting evidence, that "Defendant *may not have* had a uniform policy regarding overtime," Objector's Br. at 16 (emphasis added), is insufficient to preclude certification.

## C.    Typicality

Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (internal quotation marks omitted).  "[M]inor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiffs and the class.  *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).  Here, Plaintiff's claims arise from the same factual and legal circumstances - that Plaintiff and Class Members were not paid premium overtime wages for all overtime hours worked.  *See Willix v. HealthFirst, Inc.*, No. 07 Civ. 1143, 2009 WL 6490087, at *2-3 (E.D.N.Y. Dec. 3, 2009) (typicality satisfied where marketing representatives suffered same injury as a result of defendant's policies concerning overtime compensation); *Toure v. Cent. Parking Sys. of N.Y.,* No. 05 Civ. 5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) (typicality satisfied where plaintiffs and class members had same claims for unpaid overtime).

---

[7]    *See* Ex. C (Adlin Dep.) Tr. 93:21-25, 94:2-5, 97:2-5; Ex. D (Guadron Dep.) Tr. 86:23-25, 87:2-8, 104:10-19; Ex. F (Parrilla Dep.) Tr. 33:2-10.

**D.      Adequacy**

Plaintiff Guadron is an adequate class representative.[8]  Rule 23(a)(4) requires that "the

representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P.

23(a)(4).  "The adequacy requirement exists to ensure that the named representatives will have

an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic

to the interests of other class members."  *Toure*, 2007 WL 2872455, at *7 (internal quotation

marks omitted); *see also Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 4357376, at *5

(S.D.N.Y. Sept. 16, 2011).  In the face of a vigorous but unfounded objection, Plaintiff Jorge

Guadron has been a champion of the class.  His interests and Class Members' interests are not at

odds.  Guadron Decl. ¶¶ 37-40; Kessler Decl. ¶¶ 145-149; *see Reyes v. Altamarea Grp., LLC*,

No. 10 Civ. 6451, 2011 WL 4599822, at *2 (S.D.N.Y. Aug. 16, 2011).  In addition, Shulman

Kessler LLP are adequate Class Counsel because they are "qualified, experienced, and generally

able to conduct the litigation."[9]  *See In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285,

291 (2d Cir. 1992).

Objector Morris's claims that Class Counsel breached ethical rules should have no

bearing on the Court's adequacy determination because they do not relate to Class Counsel's

---

[8]      Plaintiff does not address former plaintiff Melissa Adlin's adequacy because has opted
out of the case and is no longer a class representative.  *See Martens v. Smith Barney, Inc.*, 190
F.R.D. 134, 139-40 (S.D.N.Y. Dec. 2, 1999) ("[N]amed plaintiffs . . . who opt out of a settlement
no longer remain in the class in any capacity.").  Plaintiff also takes no position on Kim Morris's
adequacy as a class representative, but notes that the settlement class may be certified so long as
at least one class representative is adequate.  *See In re Monster Worldwide, Inc. Sec. Litig.*, 251
F.R.D. 132, 135-36 (S.D.N.Y. July 14, 2008) (finding adequacy requirement satisfied and
certifying Rule 23 class where one lead plaintiff was adequate but the other lead plaintiff was
not).
[9]      *See* Kessler Decl. ¶ 14.  Additionally, in the Order Granting Preliminary Approval, Judge
Batts appointed Shulman Kessler LLP as Class Counsel, finding that they met the requirements
of Federal Rule of Civil Procedure 23(g).  ECF No. 108.

qualifications, experience, or ability, and have no relevance here. Just last week, in *In re Pfizer Inc. Securities Litigation*, Judge Swain rejected a similar attempt to defeat class certification through ethical attacks on class counsel. Nos. 04 Civ. 9866 & 05 MD 1688, 2012 WL 1059671, at *8 (S.D.N.Y. Mar. 29, 2012). As Judge Swain noted, the Court should be "skeptical of . . . ethical attacks on class counsel" when making the adequacy determination. *Id.* As in *In re Pfizer*, Objector Morris's allegations of ethical failures by Class Counsel, even if true (which they are not) do not suggest that Class Counsel are "inadequate to act . . . for the class." *Id.* Such allegations belong "in a proper disciplinary forum" and do "not bar[] class certification[] . . . ." *Id.* (internal quotations and citation omitted); *see also In re Dynex Capital, Inc. Sec. Litig.*, No. 05 Civ. 1897, 2011 WL 2581755, at *6 n.8 (S.D.N.Y. Apr. 29, 2011).

### E. Certification Is Proper Under Rule 23(b)(3)

Rule 23(b)(3) requires that the common questions of law or fact "predominate" and that "a class action is superior to other available methods" for adjudication. Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

Here, all members of the class are unified by common factual allegations that Defendant had a policy of not paying Class Members overtime premium pay for hours worked over 40 in a workweek while pressuring them to achieve high performance goals. They are also unified by a common legal theory – that these policies violated the NYLL. These common issues predominate over any issues affecting only individual Class Members. *See Willix*, 2009 WL

10

6490087, at *4 (common issues predominated in marketing representative case alleging failure to pay overtime and other wage and hour violations).

Plaintiff also demonstrates superiority.  Superiority analyzes whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy."  *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968).  Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for Class Members.  *Johnson*, 2011 WL 4357376, at *7.  Employing the class device here will not only achieve economies of scale, but it will conserve judicial resources and preserve public confidence in the integrity of the system by avoiding the waste and delay of repetitive proceedings and preventing inconsistent adjudications.  *See Willix*, 2009 WL 6490087, at *5.  Whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement.  *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial").

## II.    The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be Approved in All Respects

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable and adequate.  Fed. R. Civ. P. 23(e).  To determine procedural fairness, courts examine the negotiating process leading to the settlement.  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).  To determine substantive fairness, courts determine whether the settlement terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).  Courts examine procedural and substantive fairness in light of the "strong judicial policy in favor of settlement" of class

action suits.  *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted).

**A.      The Proposed Settlement Is Procedurally Fair**

**1.      The Parties Reached The Settlement Through Arm's-Length Negotiations**

The proposed settlement is procedurally fair because it was reached through arm's-length negotiations and after experienced counsel had evaluated the merits of Plaintiffs' claims.  *See Reyes*, 2011 WL 4599822, at *4 (finding settlement to be "procedurally fair, reasonable, adequate, and not a product of collusion" after plaintiffs conducted arm's-length negotiations).  A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."  *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted.  "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement."  *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

Here, the settlement was reached after Plaintiffs conducted a thorough investigation and substantial discovery.  Kessler Decl. ¶¶ 35-44.  This investigation and discovery included interviewing more than 100 of Defendant's current and former employees; obtaining and reviewing documents from Plaintiffs and Class Members including paystubs, W-2s, calendars, emails, notes, Affinity policy documents, and to do lists; obtaining numerous supportive declarations; reviewing personnel files, time and pay records, and Affinity cellphone records; defending the depositions of eight Plaintiffs and Opt-Ins; and deposing three of Affinity's supervisory employees.  *Id.* ¶¶ 39-44.

On April 21, 2011, the parties attended a twelve-hour mediation at the end of which, the parties agreed on the material terms of a settlement.  *Id.* ¶¶ 53, 67.  Over the next three months,

the parties negotiated and agreed upon a formal settlement agreement. *Id.* ¶ 85; Ex. S

(Settlement Agreement). At all times, the parties negotiated on an arm's-length basis. *Id.* ¶ 68.

These arm's-length negotiations involved counsel well-versed in wage and hour law, raising a

presumption that the settlement achieved meets the requirements of due process. *See Wal-Mart*

*Stores*, 396 F.3d at 116 (citing *Manual for Complex Litigation, Third,* § 30.42 (1995) (a

"presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached

in arm's-length negotiations between experienced, capable counsel after meaningful

discovery")).  The fact that the negotiations were facilitated by Ruth D. Raisfeld, Esq., whom

courts have recognized as an experienced and well-known employment and class action

mediator, *see Johnson*, 2011 WL 4357376, at *8; *deMunecas*, 2010 WL 3322580, at *4

(S.D.N.Y. Aug. 23, 2010); *Prasker v. Asia Five Eight LLC*, No. 08 Civ. 5811, 2010 WL 476009,

at *4 (S.D.N.Y. Jan. 6, 2010); is also a strong indicator of procedural fairness, *see In re Giant*

*Interactive Grp., Inc. Sec. Litig.*, No. 07 Civ. 10588, 2011 WL 5244707, at *4 (S.D.N.Y.  Nov. 2,

2011) (parties were entitled to a presumption of fairness where mediator facilitated arms-length

negotiations); *In re AOL Time Warner, Inc. Sec. Litig.*, No. 02 Civ. 5575, 2006 WL 903236, at

*6 (S.D.N.Y. Apr. 6, 2006) (noting that involvement of mediator in pre-certification settlement

negotiations helped "ensure that the proceedings were free of collusion and undue pressure").

 Class Counsel is also experienced and able.  As Judge Batts already determined in the

Order Granting Preliminary Approval, Class Counsel is "well versed in the prosecution and

defense of wage and hour class and collective actions." *Morris*, 2011 WL 6288035, at *15; *see*

*also* Decl. of Justin M. Swartz ("Swartz Decl.") ¶ 3; Kessler Decl. ¶ 120.

> **2.    Objector Morris Alleges that Class Counsel Violated Various Ethical Rules But Does Not Allege That The Settlement Negotiations Were Collusive**

Objector Morris's and Opt-Outs' accusations about Class Counsel's alleged misconduct, which are largely untrue and grossly mischaracterized, are addressed *infra* in Section II.C.  Even if these unwarranted attacks had merit, however, they do not raise questions about the procedural fairness of the settlement, which turns on whether the negotiating process was collusive and class counsel possessed the experience and ability to represent effectively the class's interests.  *See D'Amato*, 236 F.3d at 85 (2d Cir. 2001) (procedural fairness turns on whether the negotiations were the result of "arm's length negotiations" and "whether plaintiffs' counsel possessed the experience and ability to represent effectively the class's interests") (internal citations omitted); *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 461 (S.D.N.Y. 2004) (settlement that is not the product of collusion is procedurally fair).  Accusations of ethical failures by Class Counsel are simply not relevant to procedural fairness where they do not suggest that the settlement negotiations were collusive or that class counsel did not have sufficient experience or ability.  *See* N.Y. State Bar Assoc. Cmt. [12] of Preamble to N.Y. Rules of Prof. Conduct (2009); *D'Amato*, 236 F.3d at 85-86; *In re Global Crossing*, 225 F.R.D. at 461; Decl. of Pery D. Krinsky ("Krinsky Decl.") ¶¶ 22-28.  None of Objector Morris' papers include any allegations that Class Counsel colluded with Defendant to reach the settlement or that Class Counsel is not experienced and able.  While Class Counsel takes Objector Morris's and Opt-Outs' allegations very seriously, those allegations do not have any bearing on the fairness of the settlement.  As noted above, the proper forum for Objector Morris's and Opt-Outs' personal attacks is in a disciplinary complaint, not in an objection to a class settlement.  *In re Pfizer Inc. Sec. Litig.*, 2012 WL 1059671, at *8; Krinsky Decl. ¶¶ 22-30, 33-34.

Objector Morris's cases do not support her objection concerning procedural fairness. *Stavrides v. Mellon* held only that class action status should be denied "where counsel's unethical conduct has been or is prejudicial to the interests of the class, or results in creating a conflict of interest between the attorney and the class and the attorney is, therefore, obviously unable to protect the interests of the class."  60 F.R.D. 634, 636-37 (W.D. Pa. 1973).  Here, while Objector Morris asserts that there was a conflict between Class Counsel and her, she does not argue that Class Counsel prejudiced the class in any way.  Her other case, *In re General Motors Corp. Engine Interchange Litigation*, held only that unauthorized settlement negotiations create only the "possibility" of inadequate representation and therefore warrant additional scrutiny.  594 F.2d 1106, 1124-25 (7th Cir. 1979).  In this case, there was no conflict of interest nor unauthorized settlement negotiations.  All three Plaintiffs retained Class Counsel and authorized him to engage in settlement negotiations on their behalf.  Kessler Decl. ¶ 55.  Both Objector Morris and Opt-Out Adlin knew the case was being prosecuted as a potential class or collective action, and they both attended the mediation in person.  Morris Decl. ¶¶ 30, 43; Adlin Decl. ¶¶ 36, 37; Guadron Decl. ¶¶ 17, 29.  Both of them were shown the mediation statement, attended the opening statements, were present at the conclusion of the mediation, and agreed to the terms of the settlement memorialized in the MOU.  Kessler Decl. ¶¶ 59, 65-67; Guadron Decl. ¶¶ 32-36.  Most importantly, even if two of the named plaintiffs did not understand the class-wide nature of the settlement negotiations (which is belied by their own testimony), there was no prejudice to the Class, nor does Objector identify any.  *See White v. Experian Info. Solutions, Inc.*, 803 F. Supp. 2d 1086, 1102 (C.D. Cal. 2011) (no significant prejudice from class counsel's simultaneous representation of settling plaintiffs and objecting plaintiffs, since class counsel's efforts on behalf of the settlement would have continued given the broad support for the

15

settlement and class counsel's duty to absent class members); *Maywalt v. Parker & Parsley Petroleum Co.*, 155 F.R.D. 494, 496 (S.D.N.Y. 1994) ("[C]lass counsel must act in a way which best represents the interest of the entire class," even though this "frequently diverges from the opinion of either the named plaintiff or other objectors . . . .").

In addition, even if Objector Morris and Opt-Out Adlin had not authorized Class Counsel to negotiate or agree to a class settlement on their behalf (although the record clearly indicates that they did), Class Counsel would still have had the authority to reach a class settlement on Plaintiff's behalf and to seek its approval from the Court. *See In re Ivan F. Boesky Sec. Litig.*, 948 F.2d 1358, 1366 (2d Cir. 1991) ("To empower each representative of a named plaintiff . . . to veto the very proposal of a settlement to the district court would generally not serve the purposes of Rule 23."); *In re Currency Conversion Fee Antitrust Litig.*, No. 01 MDL 1409, M-21-95, 2006 WL 3247396, at *4 (S.D.N.Y. Nov. 8, 2006) (same); *Maywalt v. Parker & Parsley Petroleum Co.*, 864 F. Supp. 1422, 1430 (S.D.N.Y. 1994) ("[O]bjections by representative plaintiffs [do] not pose an insurmountable burden for the Proposed Settlement's proponents and. . . the law in this Circuit and others [does] not bar settlement over the objections of representative plaintiffs. . . ."); *County of Suffolk v. Long Island Lighting Co.,* 907 F.2d 1295, 1325 (2d Cir.1990) (opposition from even a majority of class representatives does not constitute "an automatic bar" to settlement); *Kincade v. General Tire and Rubber Co.,* 635 F.2d 501 (5th Cir. 1981) (settlement approved over the objections of five of original six named class representatives).

### B.    The Proposed Settlement Is Substantively Fair

The settlement is also substantively fair under the *Grinnell* factors, which guide district courts in making this determination, and all of which weigh in favor of final approval.  They are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3)

the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 448, *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

        1.    <u>Litigation Through Trial Would Be Complex, Costly, and Long (*Grinnell* Factor 1)</u>

By reaching a favorable settlement prior to summary judgment motions or trial, Plaintiff avoids significant expense and delay and ensures a speedy, risk-free recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato*, 236 F.3d 78. This case is no exception, with 1,501 putative Class Members with fact-intensive claims.

Although there has been significant discovery, additional discovery would be required to establish liability and damages, including additional depositions of Class Members, and Defendant's employees and managers. A fact-intensive trial would be necessary. Preparing and putting on evidence at such a trial would consume tremendous amounts of time and demand substantial judicial resources. A trial on damages, even on a representative basis, would be costly and would further defer closure. Any judgment would likely be appealed, thereby extending the duration of the litigation. This settlement, on the other hand, makes monetary relief available to Class Members in a prompt and efficient manner. Therefore, the first *Grinnell* factor weighs in favor of final approval.

2.     The Reaction of the Class Has Been Very Positive (*Grinnell* Factor 2)

The reaction of the class to a class action settlement is a "significant factor to be weighed in considering its adequacy." *Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358, 362-63 (S.D.N.Y. 2002).  Here, Class Members were all notified of the minimum amount of money they will receive, and that they could object to or exclude themselves from the settlement.  Kessler Decl. ¶ 128; Ex. JJ (Notice) ¶¶ C(2).  Sixteen Class Members asked to be excluded from the settlement, all but one of whom is represented by Objector's Counsel.[10]  More importantly, only a single Class Member, out of more than 1,500, objected.  Kessler Decl. ¶ 132.  This response demonstrates strong support for the settlement.  *See Davis v. J.P. Morgan Chase & Co.*, No. 01 Civ. 6492, 2011 WL 4793835, at *3 (W.D.N.Y. Oct. 11, 2011) (granting final approval and noting "very little negative reaction by class members to the proposed settlement" where 11 out of 3,800 class members opted out, and 3 objected); *Willix*, 2011 WL 754862, at * 4 (granting final approval of the settlement where 7 out of 2,025 class members objected and 2 opted out); *Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207, 2010 WL 3119374, at * 3 (S.D.N.Y. Aug. 6, 2010) (granting final approval where there were no objections but 28 of 5,262 opted out, noting that "[a] small number of objections is convincing evidence of strong support by class members"); *Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008) (approving settlement where 13 out of 3,500 class members objected and 3 opted out, noting that "[t]he fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness).

The affirmative support of Plaintiff Guadron and other Class Members further evidences the positive reaction of the Class.  *See* Guadron Decl. ¶¶ 37-43; Ex. LL (Decls. of Class Members).  Dozens of other Class Members expressed their pleasure with the settlement and that

---

[10]     Other than opting out, Yu Qi Liu has not indicated that she disapproves of the settlement.  Rosenbaum Decl., Ex. C (Opt-Out).

they hope to receive their settlement payments soon.  Kessler Decl. ¶ 130; Ex. LL (Decls. of

Class Members); Decl. of Marijana F. Matura ("Matura Decl.") ¶¶ 122-124.

The fact that several Class Members represented by the same counsel are not pleased

with the settlement should not stand in the way of the "silent majority's" right to recover.  *In re*

*Lloyd's American Trust Fund Litig.*, No. 96 Civ.1262, 2002 WL 31663577, at *24 (S.D.N.Y.

Nov. 26, 2002) ("[T]his Court has a fiduciary duty to protect all Class Members-including the

silent majority who have not voiced any objections to the Settlement."); *Grant v. Bethlehem Steel*

*Corp.,* 823 F.2d 20, 23 (2d Cir. 1987) ("[T]he mere fact that the only class members expressing

opinions regarding the settlement were a vocal minority opposing it does not alter the district

court's discretion in approving the settlement or its duty to protect the interests of the silent class

majority . . . ."); *In re Nasdaq,* 187 F.R.D. 465, 479 (S.D.N.Y. 1998) ("[A]n objection based on

an assertion or argument not readily supportable at trial should not be permitted to bar

settlement").

3. Discovery Has Advanced Far Enough to Allow the Parties to Responsibly Resolve the Case (*Grinnell* Factor 3)

The parties have completed more than enough discovery to recommend settlement.  The

pertinent question is "whether counsel had an adequate appreciation of the merits of the case

before negotiating."  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004)

(internal quotation marks omitted).  "[T]he pretrial negotiations and discovery must be

sufficiently adversarial that they are not designed to justify a settlement . . . but an aggressive

effort to ferret out facts helpful to the prosecution of the suit."  *In re Austrian*, 80 F. Supp. 2d at

176 (quoting *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 263 (S.D.N.Y. 1998)) (internal

quotation marks omitted).

19

The parties' discovery here amply meets this standard. Class Counsel conducted extensive investigation before and during the litigation. See *supra* Sec. II; Kessler Decl. ¶¶ 19, 25, 36-44. The parties participated in extensive settlement negotiations during which they engaged in a vigorous exchange regarding their respective claims and defenses. Kessler Decl. ¶¶ 54, 61, 64-65.

Objector Morris asserts that the parties did not conduct sufficient discovery to reach a well-informed settlement. This argument is without merit. Class Counsel was well-equipped to evaluate the strengths and weaknesses of the case. In fact, the parties in this case conducted significantly more discovery than many cases where settlements achieved final approval. *See, e.g.*, *Johnson*, 2011 WL 4357376, at *9-10 (finding that parties were "well-equipped to evaluate the strengths and weaknesses of the case" and granting final approval where parties engaged in informal discovery and no depositions were taken); *Diaz v. E. Locating Serv.*, No. 10 Civ. 4082, 2010 WL 5507912, at *5 (S.D.N.Y. Nov. 29, 2010) (granting final approval where parties reached settlement pre-litigation, and informal discovery consisted of pre-suit document exchange); *Matheson v. T-Bone Rest., LLC*, No. 09 Civ. 4214, 2011 WL 6268216, at *5 (S.D.N.Y. Dec. 13, 2011) (granting final approval where parties engaged in informal information exchange and no depositions were taken); *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 56-57 (E.D.N.Y. 2010) (granting final approval where settlement was reached prior to formal discovery).[11]

Objector Morris's cases are not to the contrary. The first case, *In re Austrian*, supports final approval here because the court granted final approval where the parties had engaged in

---

[11]    In the *Johnson*, *Diaz*, and *Matheson* cases, Plaintiff's Counsel, Outten & Golden LLP ("O&G") was lead counsel and therefore has firsthand knowledge of the (much less advanced) status of discovery in those cases. Swartz Decl. ¶ 4.

informal discovery but had not conducted formal discovery like they did here.  80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000).  Objector Morris's remaining cases do no more than illustrate that in some cases, formal discovery preceded settlement.[12]  Accordingly, Objector Morris's objection that the discovery here was insufficient to support settlement should be overruled.  The third *Grinnell* factor weighs in favor of final approval.

### 4.   Plaintiff Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5)

Although Plaintiff's case is strong, it is not without risk.  "Litigation inherently involves risks."  *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997).  Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome."  *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969).

Here, a trial on the merits would involve significant risk as to both liability and damages.  The discovery conducted by the parties showed that Defendant did compensate some Marketing Representatives for some of their overtime hours.  Kessler Decl. ¶ 51.  Plaintiff may have difficulty establishing that Defendant had a practice of encouraging Marketing Representatives to work overtime without pay, and that Defendant consistently followed a policy of refusing to approve overtime unless the Marketing Representative reached her quota.  Even though Plaintiff would be able to shift the burden of proving the number of hours worked to Defendant under

---

[12]   O&G lawyers were counsel of record on three of the five cases cited by Objector Morris.  *Wright v. Stern* and *Martens v. Smith Barney, Inc.* were two unusually lengthy and bitterly-fought employment discrimination class actions, both of which settled at a much later stage of litigation than the vast majority of wage and hour class action settlements.  In *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010), in which your Honor granted final approval, the stage of discovery reached was nearly identical to this case, although there were no depositions in *Khait*.  Swartz Decl. ¶ 5.  *Khait* required an expert only because the defendant produced voluminous electronic data that could not be easily read or manipulated.  *Id.*  In the dozens of successful wage and hour class and collective action cases that O&G has prosecuted, O&G has very rarely hired an expert to perform damages calculations, which can virtually always be performed in-house so long as the data is readable and manipulable.  *Id.*

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946), Plaintiff would still have to overcome Defendant's attacks on their recollection and credibility. Ultimately, Plaintiff would still need to prove that Class Members performed work for which they were not properly paid. Plaintiff may have difficulty doing so in light of the factual record in this case. *See* Kessler Decl. ¶¶ 46-51; Matura Decl. ¶¶ 58-62. Moreover, when wage and hour cases reach juries, the results can be unpredictable, as is demonstrated by the last three wage and hour trials of which Plaintiff's Counsel is aware. Swartz Decl. ¶ 7.

While Plaintiff believes that he could ultimately establish Defendant's liability, this would require significant factual development and favorable outcomes at trial and on appeal, both of which are inherently uncertain and lengthy. The proposed settlement alleviates this uncertainty. This factor therefore weighs in favor of final approval.

5.  Establishing a Class and Maintaining It Through Trial Would Not Be Simple (*Grinnell* Factor 6)

The risk of obtaining class certification and maintaining it through trial is also present. Class certification would likely be reached only after extensive briefing and further discovery. Defendant may argue that individual questions preclude class certification. As Objector Morris points out, there exists a possibility that the Court would not grant class certification of the class in light of *Dukes*. Objector's Br. at 14-17. If a class were certified, Defendant would likely seek permission to file an interlocutory appeal under Federal Rule of Civil Procedure 23(f). *See, e.g.*, *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234 (2d Cir. 2011). Risk, expense, and delay permeate such a process. Settlement eliminates this risk, expense, and delay.

6.   Defendant's Ability to Withstand a Greater Judgment Is Not
     Determinative (*Grinnell* Factor 7)

It is not certain whether Defendant would be able to withstand a greater judgment.

Affinity operates in an industry currently undergoing tremendous change.  Recent healthcare

reforms at the federal level could affect Affinity's business in unforeseen ways.  *See* Kate

Pickert, *The First Victims of Health Care Reform*, TIME, Aug. 26, 2010.

In any event, a "defendant's ability to withstand a greater judgment, standing alone, does

not suggest that the settlement is unfair."  *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80

F. Supp. 2d at 178 n.9 (alterations and citation omitted)); *Castagna v. Madison Square Garden,*

*L.P.*, No. 09 Civ. 10211, 2011 WL 2208614, at *7 (S.D.N.Y. June 7, 2011).  Courts assign

"relatively little weight" to this factor.  *See Davis*, 2011 WL 4793835, at *4 (W.D.N.Y. Oct. 11,

2011).  Even if this factor is neutral, it does not preclude final approval.  Objector Morris's

objection that the parties did not engage in discovery on Defendant's financial condition should

therefore be overruled.[13]

7.   The Settlement Fund Is Substantial in Light of the Possible Recovery and
     the Attendant Risks of Litigation; (*Grinnell* Factors 8 and 9)

The $2,500,000 settlement is a very good deal for the Class.  By Class Counsel's

estimation, it represents approximately 38% of the likely unliquidated value of the case after

trial, which is significant given the risks of litigation.  Matura Decl. ¶ 90; *see Alleyne*, 264 F.R.D.

at 57-58 (granting final approval of settlement fund representing approximately 17% of

maximum potential recovery calculated without liquidated damages).

---

[13]    Objector Morris argues that because there is no information regarding Defendant's ability
to pay a larger judgment, this weighs against final approval.  However, the case she cites for this
proposition, *Odom v. Hazen Transport, Inc.*, underscores that this factor carries little weight.
275 F.R.D. 400, 411 (W.D.N.Y. 2011).  In *Odom*, the court *granted* final approval of the
settlement despite the fact that the parties did not dispute that the defendant could withstand a
greater judgment.

Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement amount is more than reasonable.  The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'"  *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178).  "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'"  *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).  "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."  *Grinnell Corp.*, 495 F.2d at 455 n.2; *see also Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 246 (E.D.N.Y. 2010).  "It is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982).  Even if Objector's most fantastical estimate were true, and the best possible recovery was $125 million, it would not bar approval of the settlement, given the risks.  *See Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423, at *12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million").

Despite criticizing the settlement amount as being too low compared to the maximum potential recovery, Objector's Counsel fails to provide any reasoned estimate of the maximum potential recovery for the Class.  In fact, Objector's Counsel provided a damages calculation for only *two* clients, Linda Sumpter and Anush Kuryachaya, neither of whom has been deposed.

24

Objector's Br. at 19.  Conspicuously, Objector's Counsel failed to provide any estimates for the damages of Objector Morris or any other Opt-Outs.  Objector's Br. at 19.

Moreover, Objector Morris misleads the Court by failing to reference Class Counsel's *post*-deposition, greatly-reduced damages calculations for her or Opt-Out Adlin in her damages chart, see Objector's Br. at 19, even though Class Counsel produced these to Objector's Counsel and the calculations are appended in Objector Morris's submissions, Matura Decl. ¶¶ 67-75; Decl. of Michael Taubenfeld, Exs. 3, 9.  These calculations incorporated deposition testimony which discredited their prior declaration testimony regarding the number of overtime hours that they had worked and indicated that Objector Morris's and Opt-Out Adlin's likely damages were much less than they now represent to the Court.  *See* Matura Decl., Exs. M, O (Revised Damages Calculations).  The fact that Objector's Counsel only submitted damages estimates for two of their clients suggests that the Opt-Outs did not have damages as large as Objector would like the Court to think.  Objector's Counsel's selection bias also shows what little support there is for Objector's assertion that Class Counsel settled this case for an unreasonable amount.

Class Counsel estimates that, if the class were to win at trial and survive an appeal, the class-wide unpaid wages recovery would be $6,534,780.  The $2.5 million settlement amount compares favorably with this.  Class Counsel's calculation is as follows: (77,795 total Class Member workweeks) x ($24.00 average overtime rate) x (5 overtime hours per week) x (70% of workweeks representing overtime weeks).  Matura Decl. ¶ 90.

Five overtime hours per week is a conservative but reasonable estimate of what Plaintiffs could likely prove on a class-wide basis.  *Id.*  The average Class Member that Class Counsel interviewed reported that she worked 20 hours of overtime per week.  When cross-examined, however, many of the Plaintiffs and Opt-Ins reported overtime decreased significantly.  For

example, Objector Morris originally represented that she worked on average 78 hours per week. *See* Ex. M (Aff. of Kim Morris in Supp. of Conditional Certification) ¶ 9. This estimate was discredited by her deposition testimony, where she testified that she worked only 55 hours per week. Ex. B (Morris Dep.) Tr. 112:5-8. Opt-Out Adlin's initial estimate was also reduced when cross-examined. *Compare* Ex. N (Aff. of Melissa Adlin in Supp. of Conditional Certification) ¶ 9 (declaring that she worked 60.5 hours per work) *with* Ex. C (Adlin Dep.) Tr. 81:14-19, 111:8-11 (testifying that she worked 2-3 overtime hours per day and did not work any overtime for at least the final three months of her employment); Kessler Decl. ¶¶ 46-49.[14]

   Objector Morris's argument that the settlement amount is too low incorrectly assumes that the Plaintiffs' and original Opt-Ins' initial un-cross-examined estimates of hours worked could be extrapolated to the whole class in a damages trial. However, Objector Morris provides no evidence that these estimates can be extrapolated to other Class Members. *See, e.g.*, *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 949-50 (9th Cir. 2011) (representative testimony could not be extrapolated to the entire class); *Cruz v. Dollar Tree Stores, Inc.*, Nos. 07 Civ. 2050 & 4012, 2011 WL 2682967, at *5 (N.D. Cal. July 8, 2011) (same). It is also unlikely that every Class Member worked as much unpaid overtime as the Plaintiffs and Opt-Ins who self-selected and came forward to participate in the case. *Garza v. Chicago Transit Auth.*, No. 00 Civ. 438, 2001 WL 503036, at *2 (N.D. Ill. May 8, 2001) (noting that opt-in class was self-selective). In fact, it is likely that many Class Members worked little or no uncompensated overtime. Matura Decl., Ex. U (Holloman Aff.) ¶ 9; Ex. E (Garcia Dep.) Tr. 58:19-25. This would significantly decrease the per-person overtime hours and, therefore the value of the case as a whole. A more

---

[14]    Additionally, Objector Morris and Opt-Out Adlin are vulnerable to credibility attacks due to their prior inconsistent statements and prior convictions for social services fraud and conspiracy to sell drugs, respectively. Kessler Decl. ¶ 46; Ex. B (Morris Dep.) Tr. 26:8-14; Ex. C (Adlin Dep.) Tr. 22:2-10.

reasonable and accurate calculation of class-wide damages must be based on the facts in the record as described above.

Accordingly, Objector Morris's claim that the settlement represents 2%-5% of total Class damages is grossly inaccurate and contrary to the factual record. Objector Morris cites Class Counsel's initial damage calculations, which, as explained above, were discredited by Objector Morris's and Opt-Out Adlin's own deposition testimony. Objector Morris's estimates also assumes that Plaintiffs would obtain full liquidated damages. However, only the FLSA opt-ins can recover 100% liquidated damages under the FLSA. For nearly the whole liability period, liquidated damages under the NYLL were capped at 25%. Moreover, Plaintiffs would bear the burden of proving NYLL liquidated damages for most of the class period, which is not an easy task. *See*, *e.g.*, *Gustafson v. Bell Atlantic Corp.*, 171 F. Supp. 2d 311, 327 (S.D.N.Y. 2001) (denying liquidated damages under NYLL because plaintiff failed to prove willfulness). Interest is also not a sure thing. *Rodriguez et al. v. Almighty Cleaning, Inc.*, 784 F.Supp.2d 114 n.5 (E.D.N.Y. 2011) (declining to award 9% prejudgment interest).

Finally, not only is the settlement amount 38% of the estimated value of the case, it is nearly 30% of Class Counsel's $9.3 million *initial* negotiation position at mediation, which was intended to test Defendant's upper limits of settlement authority. Kessler Decl. ¶ 54. Although Class Counsel took this aggressive negotiating position in good faith, and based it on real data, it was an unrealistic result after trial. *Id.* ¶ 61. "After all, high-balling the initial settlement demand is Negotiation 101." *May v. Wal-Mart Stores, Inc.*, 751 F. Supp. 2d 946, 949 (E.D. Ky. 2010). Moreover, Plaintiffs learned additional facts and considered Defendant's legal arguments during mediation, which indicated that a realistic potential recovery was considerably less than $9.3 million. Kessler Decl. ¶ 61.

As explained above, the amount that Class Members will receive reflects a careful balancing of the claims and risks. When settlement assures immediate payment of substantial amounts to class members, "even if it means sacrificing 'speculative payment of a hypothetically larger amount years down the road,'" settlement is reasonable under this factor. *See Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008). Objector Morris's objection that the settlement amount in inadequate should be overruled.

### C.      Objector Morris's Remaining Objections Should Be Overruled

The Court should overrule Objector Morris's remaining objections. Because of the serious nature of some of Objector Morris's and Opt-Outs' allegations, Plaintiff addresses them in the attached Kessler, Matura, and Krinsky Declarations, even though they have no bearing on the fairness, adequacy, or reasonableness of the settlement. The declarations submitted by Objector Morris, Opt-Outs, and Objector's Counsel contain numerous inaccurate statements, mischaracterizations, and in a few egregious instances, flat-out misrepresentations. *See* Kessler Decl. ¶¶ 15, 20-21, 31, 33, 35, 46-51, 55, 57-60, 62-63, 65-67, 71-76, 79, 82, 84, 90-98, 100-111, 115-126; Matura Decl. ¶¶ 14, 19, 26, 28-29, 38, 67, 71, 74, 79-86, 91-120.

Objector Morris's collateral and personal attacks on Class Counsel appear designed to deflect the Court's attention from the real issue – whether the settlement is fair, adequate, and reasonable.[15] These attempts are unproductive and improper. The New York State Bar

---

[15]     The conclusions of Objector Morris's expert, Deborah A. Scalise, attempt to usurp the Court's role by opining on Class Counsel's adequacy and are therefore inadmissible. *See* Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 5979 (1993). Moreover, even if the Court determines that Ms. Scalise's declaration contains "specialized knowledge" that assists the Court, it still is inadmissible because it does nothing more than regurgitate the allegations made by Objector's Counsel and is not based upon an independent investigation. *See Daubert*, 509 U.S. at 58. Class Counsel submits the declaration of Pery D. Krinsky to the extent it provides specialized knowledge helpful to the Court and to explain why the proper forum for allegations of ethical failures unrelated to the issues before the Court is in a separate disciplinary proceeding.

Association Committee on Standards of Attorney Conduct warns: "[T]he purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer . . . does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule." N.Y. State Bar Assoc. Cmt. [12] of Preamble to N.Y. Rules of Prof. Conduct (2009). Objector Morris's remaining objections, which do not have any bearing on the fairness, adequacy, or reasonableness of the settlement, should be overruled. *See In re Pfizer Inc. Sec. Litig.*, 2012 WL 1059671, at *8; *In re Dynex Capital, Inc. Sec. Litig.*, 2011 WL 2581755, at *6 n.8 ("Defendants sometimes challenge class counsel's adequacy on the ground of violation of professional ethics in connection with the class litigation. Most courts . . . have not barred class certifications grounded on any determination of the merits of such ethical complaints." (citing 1 Newberg on Class Actions § 3:42 (4th ed.))).

While the Court should allow her the opportunity to voice her objections, it should also keep in mind the interests of the uncomplaining majority – the 1,484 Class Members who hope to receive their settlement checks as soon as possible. *See* Ex. LL (Decls. of Class Members); s*ee also Cagan*, 1990 WL 73423 at *3. The majority's implicit approval of this settlement is a "strong indication" that it is fair, and that the Court should grant final approval. *See Wright*, 553 F. Supp. 2d at 344-45.

## III.   Approval of the FLSA Settlement Is Appropriate Under Federal Law

Plaintiff also requests that the Court approve the settlement of the FLSA collective claims. Plaintiffs brought their FLSA claims as a collective action. Unlike the procedure under Rule 23, collective members must affirmatively opt into the litigation in order to join it. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001). Because,

under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *Matheson v. T-Bone Rest., LLC*, No. 09 Civ. 4214, 2011 WL 6268216, at *5 (S.D.N.Y. Dec. 13, 2011). Accordingly, the high standard for approval of a class action under Rule 23 does not apply to an FLSA settlement.

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982). Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *deMunecas*, 2010 WL 3322580, at *7. Here, the settlement was the result of litigation and arm's-length negotiation involving vigorous back and forth. *See* Kessler Decl. ¶ 68. Because the Settlement Agreement resolves a clear and actual dispute waged in contested litigation and resolved through arm's-length settlement negotiations, it should be approved.

<u>**CONCLUSION**</u>

For the reasons set forth above, Plaintiff respectfully requests that the Court: (1) finally certify the settlement class; (2) overrule all of Objector Morris' objections; and (3) grant final approval of the Settlement Agreement.

Dated: Melville, New York
      April 3, 2012                Respectfully submitted,

                                   **SHULMAN KESSLER LLP**
                                   By:

                                 /s/ Troy L. Kessler
                                 Troy L. Kessler
                                 Marijana F. Matura
                                 510 Broadhollow Road, Suite 110

Melville, New York 11747
Telephone: (631) 499-9100

***Attorneys for Plaintiff and the Class***


**OUTTEN & GOLDEN LLP**
By:


/s/ Justin M. Swartz
Justin M. Swartz

**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Jennifer L. Liu
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000

***Attorneys for Plaintiff***

31