Case 1:09-cv-01932-ALC-MHD Document 149-1 Filed 04/03/12 Page 1 of
22

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW
YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5 - 8 - 12

KIM MORRIS, MELISSA ADLIN and
JORGE GUADRON, on behalf of themselves
and all others similarly situated,,

Plaintiffs,

No. 09 Civ. 1932 (ALC)

-against-

AFFINITY HEALTH PLAN, INC.,

Defendant.

## ORDER GRANTING PLAINTIFF'S MOTION FOR CERTIFICATION OF THE SETTLEMENT CLASS, FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT, APPROVAL OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND APPROVAL OF CLASS REPRESENTATIVE SERVICE AWARD

Plaintiff Jorge Guadron ("Plaintiff") and Class Members are current and former Marketing Representatives or Marketing Specialists who worked at Affinity Health Plan, Inc. ("Affinity").

On March 3, 2009, Named Plaintiffs Jorge Guadron and Kim Morris and former Named Plaintiff Melissa Adlin (collectively, "Plaintiffs") commenced this action as a putative class action under Federal Rule of Civil Procedure 23 ("Rule 23") and as a collective action under 29 U.S.C. § 216(b). Declaration of Troy L. Kessler ("Kessler Decl.") ¶¶ 23, 27. Plaintiffs alleged that Defendants violated the NYLL by requiring Plaintiffs and others similarly situated to work off-the-clock, and that Defendant knew of and encouraged such practices. *Id.*. On June 12, 2009, Plaintiffs filed an Amended Complaint. *Id.* ¶ 27.

On March 1, 2010, the Court approved a stipulation to conditionally certify a collective action including Marketing Representatives and Marketing Specialists ("Marketing Representatives") in Affinity's South Region. *Id.* ¶ 34. In March 2010, Notice issued to 438

current and former Marketing Representatives. *Id.* In response to the notice, 45 Class Members affirmatively opted into the FLSA case, bringing the total number of Plaintiffs and Opt-Ins to 64. *Id.*

The parties engaged in substantial discovery before agreeing to resolve this case. *Id.* ¶¶ 36-44. Class Counsel conducted an extensive investigation, including interviews of more than 100 employees; obtaining and reviewing documents from them, and obtaining supportive declarations. *Id.* ¶ 40. On November 8, 2010, the parties agreed to attend mediation. *Id.* ¶ 37. In advance of mediation, the parties engaged in targeted discovery. *Id.* ¶¶ 36-44. Defendant produced personnel files, time and pay records, and Affinity cell phone records for a sample of eleven Plaintiffs and Opt-Ins, and deposed the eight of them. *Id.* ¶¶ 39, 43. Plaintiffs deposed three Affinity corporate witnesses, including a senior manager, a regional manager, and a former supervisor. *Id.* ¶ 44.

On April 21, 2011, the parties participated at a mediation conducted by Ruth D. Raisfeld, Esq., a well-known employment and class action mediator. *Id.* ¶¶ 53-70. After twelve hours of negotiations, the parties agreed to the material terms of a settlement and counsel signed a memorandum of understanding. *Id.* ¶¶ 68-69. Over the next three months, the parties negotiated the terms of a formal Joint Stipulation of Settlement and Release ("Settlement Agreement") and on or around July 20, 2011, agreed on the final terms. *Id.* ¶¶ 77, 85. Plaintiffs Jorge Guadron ("Guadron") and Melissa Adlin ("Adlin") signed the Settlement Agreement, as did Affinity. *Id.* ¶¶ 91, 96. Adlin subsequently sought to "withdraw" her signature. *Id.* ¶ 103. Objector Morris refused to sign the Settlement Agreement. *Id.* ¶¶ 98-99.

On April 3, 2012, Plaintiff filed a Motion for Certification of the Settlement Class and Final Approval of the Class Action Settlement ("Motion for Final Approval"). That same day, Plaintiff also filed Motions for Approval of Attorneys' Fees and Reimbursement of Expenses ("Motion for Attorneys' Fees") and for Class Representative Service Award ("Motion for Service Award").

The Court held a fairness hearing on April 17 and 18, 2012, after the Class Action Fairness Act ("CAFA") notice period had concluded.

Having considered the Motions for Final Approval, for Attorneys' Fees and Reimbursement of Expenses, for Class Representative Service Award, the supporting declarations, the evidence and oral argument presented at the fairness hearing, and the complete record in this matter, for the reasons set forth therein and stated on the record at the fairness hearing, and for good cause shown,

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

**CERTIFICATION OF THE SETTLEMENT CLASS**

1.      The Court certifies the following class under Federal Rule of Civil Procedure 23(e), for settlement purposes:

> All individuals who worked as Marketing Representatives or Marketing Specialists for Affinity Health Plan, Inc. at any time between March 3, 2003 and April 15, 2011.

2.      The settlement class meets all of the requirements for class certification under Federal Rule of Civil Procedure 23(a) and (b)(3).

3.      The settlement class satisfies Fed. R. Civ. P. 23(a)(1) because there are 1,501 Class

Members and, thus, joinder is impracticable. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("[N]umerosity is presumed at a level of 40 members . . . .").

      4.    The proposed class also satisfies Federal Rule of Civil Procedure 23(a)(2), the commonality requirement.  All Class Members raise common issues: (1) whether Defendant had a policy of not paying Marketing Representatives and Specialists overtime premium pay for hours worked over 40 in a workweek; (2) whether Defendant failed to pay Class Members premium overtime wages; and (3) whether Defendant knew or should have known that Class Members were working "off-the-clock." *See Willix v. Healthfirst*, No. 07 Civ. 1143, 2009 WL 6490087, at *2 (E.D.N.Y. Dec. 3, 2009) (commonality satisfied where Medicaid marketing representatives alleged overtime and misclassification claims); *Ross v. RBS Citizens, N.A.*, 667 F.3d 900, 908-09 (7th Cir. Jan. 27, 2012) (commonality established for Plaintiffs' off-the-clock claims); *Nobles v. State Farm Mut. Auto. Ins. Co.*, No. 10 Civ. 4175, 2011 WL 3794021, at *4 (W.D. Mo. Aug. 25, 2011) (same).

      5.    The Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), does not preclude a commonality finding. The weight of authority rejects the argument that *Dukes* bars certification in wage and hour cases. *See, e.g.*, *Ross*, 667 F.3d at 908-09 (finding *Dukes* inapplicable and holding that "unlawful policy denying employees earned-overtime compensation . . . is the common answer that potentially drives the resolution of this litigation"); *Youngblood v. Family Dollar Stores, Inc.*, No. 09 Civ. 3176, 2011 WL 4597555, at *4 (S.D.N.Y. Oct. 4, 2011) ("Unlike the claims in *Wal-Mart*, Plaintiffs' NYLL claims 'do not require an

examination of the subjective intent behind millions of individual employment decisions; rather, the crux of this case is whether the company-wide policies, as implemented, violated Plaintiffs' statutory rights.'"); *Espinoza v. 953 Assocs. LLC*, No. 10 Civ. 5517, 2011 WL 5574895, at *12 (S.D.N.Y. Nov. 16, 2011) (distinguishing *Dukes* in that plaintiffs' claims that "Defendants failed to pay minimum wages and overtime compensation as a result of certain policies and practices . . . alleged a common injury that is capable of class-wide resolution"); *Ramos v. SimplexGrinnell LP*, 796 F. Supp. 2d 346, 356 (E.D.N.Y. Jun. 21, 2011) (noting that *Dukes* had "little bearing" where plaintiffs had adduced significant proof that defendant routinely failed to pay proper wages). Moreover, post-*Dukes*, courts have routinely found commonality in off-the-clock cases where, as here, the plaintiffs alleged a common policy or practice to require plaintiffs to meet quotas but to enforce limits on the number of overtime hours that could be reported. *See* Ex. C (Adlin Dep.) Tr. 93:21-25, 94:2-5, 97:2-5; Ex. D (Guadron Dep.) Tr. 86:23-25, 87:2-8, 104:10-19. *See, e.g., Ross*, 667 F.3d at 908-09; *Nobles*, 2011 WL 3794021, at *4-5; *Espinoza*, 2011 WL 5574895, at *9; *Ugas v. H&R Block Enters., LLC*, No. 09 Civ. 6510, 2011 WL 3439219, at *910 (C.D. Cal. Aug. 4, 2011).

      6.     The proposed class satisfies Federal Rule of Civil Procedure 23(a)(3), typicality, because Plaintiff's claims arose from the same factual and legal circumstances that form the bases of the Class Members' claims. *See Willix*, 2009 WL 6490087, at *2-3 (typicality satisfied where marketing representatives suffered same injury as a result of defendant's policies concerning overtime compensation); *Toure v. Cent. Parking Sys. of N.Y.*, No. 05 Civ. 5237, 2007

WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) (typicality satisfied where plaintiffs and class members had same claims for unpaid overtime).

7.      The settlement class satisfies Federal Rule of Civil Procedure 23(a)(4) because there is no evidence that Plaintiff's and Class Members' interests are at odds. *See Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 4357376, at *5 (S.D.N.Y. Sept. 16, 2011); *Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2011 WL 4599822, at *2 (S.D.N.Y. Aug. 16, 2011).

8.      In addition, Class Counsel, Shulman Kessler LLP, have substantial experience prosecuting and settling wage and hour actions, are well-versed in wage and hour and class action law, have been class or lead counsel in numerous wage and hour class and collective actions, *see, e.g., Garcia v. Pancho Villa's Huntington Vill., Inc.*, No. 09 Civ. 486, 2011 WL 6287932, at *6 (E.D.N.Y. Dec. 15, 2011); *Mackey v. Windswept Envtl. Grp.*, No. 09 Civ. 1113, slip op. at 9 (E.D.N.Y. Oct. 14, 2010); *Garcia v. Prestige First Ave. Cleaning Corp.*, No. 10 Civ. 4117 (S.D.N.Y. Jan. 3, 2011); *Chicas v. Jocorena Bakery Inc.*, No. 09 Civ. 5402 (E.D.N.Y. Jan. 7, 2011); *Cha v. Imaginasian Entm't, Inc.*, No. 09 Civ. 1120 (S.D.N.Y. Jan. 8, 2010); *Cano v. Four M Food Corp.*, No. 08 Civ. 3005 (E.D.N.Y. Sept. 10, 2009), and are found to be adequate class counsel here. In addition, the Court also affirms its prior ruling that Class Counsel meets all of the criteria of Federal Rule of Civil Procedure 23(g).

9.      Objector Morris's allegations of Class Counsel's ethical failures do not have any bearing on Class Counsel's qualifications, experience, or ability to conduct the litigation and therefore are not relevant to Class Counsel's adequacy. *See In re Drexel Burnham Lambert*

*Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992) (adequacy requires that counsel be "qualified, experienced, and generally able to conduct the litigation"); *In re Pfizer Inc. Sec. Litig.*, Nos. 04 Civ. 9866 & 05 MD 1688, 2012 WL 1059671, at *8 (S.D.N.Y. Mar. 29, 2012) ("When assessing the adequacy of counsel, courts are generally skeptical of . . . ethical attacks on class counsel."). Objector Morris's allegations are better suited in a disciplinary forum and do not bar class certification here. *See In re Pfizer Inc. Sec. Litig.*, 2012 WL 1059671, at *8; *In re Dynex Capital, Inc. Sec. Litig.*, No. 05 Civ. 1897, 2011 WL 2581755, at *6 n.8 (S.D.N.Y. Apr. 29, 2011).

10.     The proposed class also satisfies Rule 23(b)(3). Here, all members of the class are unified by common factual allegations that Defendant had a policy of not paying Class Members overtime premium pay for hours worked over 40 in a workweek while pressuring them to achieve high performance goals. They are also unified by a common legal theory – that these policies violated the NYLL. These common issues predominate over any issues affecting only individual Class Members. *See Willix*, 2009 WL 6490087, at *4 (common issues predominated in marketing representative case alleging failure to pay overtime and other wage and hour violations).

11.     Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for Class Members, particularly those who lack the resources to bring their claims individually. *See Johnson*, 2011 WL 4357376, at *7; *Reyes*, 2011 WL 4599822, at *3. The Plaintiffs and Class Members have limited financial

resources with which to prosecute individual actions.  Concentrating the litigation in this Court is

desirable because the allegedly wrongful conduct occurred within its jurisdiction.  Employing

the class device here will not only achieve economies of scale for Class Members, but will also

conserve judicial resources and preserve public confidence in  the integrity of the system by

avoiding the waste and delay repetitive proceedings and preventing inconsistent adjudications.

*See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998) (class action superior when

individual  claims would  burden  judiciary,  be inefficient  for  plaintiffs,  and  yield

inconsistent results); *see also Willix*, 2009 WL 6490087, at *5 (class adjudication would

conserve judicial resources and increase efficiency for class members in overtime case on behalf

of marketing representatives).

## APPROVAL OF THE SETTLEMENT AGREEMENT

12.     The Court hereby grants the Motion for Final Approval and finally approves the

settlement as set forth in the Settlement Agreement.

13.     Rule 23(e) requires court approval for a class action settlement to ensure that it is

procedurally and  substantively fair, reasonable, and  adequate. Fed. R.  Civ.  P.  23(e).  To

determine procedural fairness, courts examine the negotiating process leading to the settlement.

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche

Bank*, 236 F.3d 78, 85 (2d Cir. 2001). To determine substantive fairness, courts determine

whether the settlement's terms are fair, adequate, and reasonable according to the factors set

forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

14.     Courts examine procedural and substantive fairness in light of the "strong judicial

policy favoring settlements" of class action suits. *Wal-Mart Stores*, 396 F.3d at 116; *see also Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238, 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005); *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

15. A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (quoting *Manual for Complex Litigation, Third*, § 30.42 (1995)); *see also D'Amato*, 236 F.3d at 85. "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4; *see also In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761, 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008); *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002).

### Procedural Fairness

16. The settlement is procedurally fair, reasonable, adequate, and not a product of collusion. *See* Fed. R. Civ. P. 23(e); *deMunecas*, 2010 WL 3322580, at *4. The settlement was reached after Plaintiffs had conducted a thorough investigation and evaluated the claims, and after arm's-length negotiations between the parties.

17. Before and during the litigation, Class Counsel conducted an extensive investigation, conducting interviews with more than 100 of Defendant's current and former

employees; obtaining and reviewing documents from Plaintiffs and Class Members, including

paystubs, calendars, emails, notes, Affinity policy documents, and to do lists; and obtaining

declarations from numerous Plaintiffs, Class Members, and other current and former employees

of Affinity. Kessler Decl. ¶¶ 39, 40.

     18.    The parties participated in extensive settlement negotiations during which they

engaged in a vigorous exchange regarding their respective claims and defenses. *Id.* ¶¶ 36-44,

5370. At all times during the settlement process, the parties negotiated on an arm's-length basis.

*Id.* ¶ 68. These arm's-length negotiations involved counsel well-versed in wage and hour law,

raising a presumption that the settlement achieved meets the requirements of due process. *See*

*Wal-Mart Stores*, 396 F.3d at 116 (citing *Manual for Complex Litigation, Third,* § 30.42 (1995)

(A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement

reached in arm's-length negotiations between experienced, capable counsel after

meaningful discovery")). The involvement of Ruth D. Raisfeld, Esq., an experienced and

well-known employment and class action mediator, is also a strong indicator of procedural

fairness. *See In re Giant Interactive Grp., Inc. Sec. Litig.*, No. 07 Civ. 10588, 2011 WL

5244707, at *4 (S.D.N.Y. Nov. 2, 2011) (parties were entitled to a presumption of fairness where

mediator facilitated arms length negotiations); *In re AOL Time Warner, Inc. Sec. Litig.*, No. 02

Civ. 5575, 2006 WL 903236, at *6 (S.D.N.Y. Apr. 6, 2006) (noting that involvement of

mediator in pre-certification settlement negotiations helped "ensure that the proceedings were

free of collusion and undue pressure").

19.     Objector Morris's accusations of ethical failures by Class Counsel do not suggest that the settlement negotiations were collusive or that Class Counsel did not have sufficient experience or ability, and therefore are not relevant to the settlement's procedural fairness. *See* N.Y. State Bar Assoc. Cmt. [12] of Preamble to N.Y. Rules of Prof. Conduct (2009); *D'Amato*, 236 F.3d at 85-86; *In re Global Crossing*, 225 F.R.D. at 461. As noted above, the proper forum for Objector Morris's allegations of ethical failures is in a disciplinary complaint, not in an objection to a class settlement that, like here, has no bearing on the settlement's fairness. *In re Pfizer Inc. Sec. Litig.*, 2012 WL 1059671, at *8 ("Defendants' contentions regarding ethical lapses can be better advanced in a proper disciplinary forum.") To the extent that Objector Morris has made any objections to the procedural fairness of the settlement, these objections are overruled.

### *Substantive Fairness*

20.     The settlement is substantively fair. All of the factors set forth in *Grinnell*, which provides the analytical framework for evaluating the substantive fairness of a class action settlement, weigh in favor of final approval.

21.     The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. 495 F.2d at 463.

22.     Litigation through trial would be complex, expensive and long.  Therefore, the first *Grinnell* factor weighs in favor of final approval.

23.     The Class's overall reaction to the settlement was positive.  The Notice included an explanation of the allocation formula and an estimate of each Class Member's award.  The Notice also informed Class Members of their right to object to or exclude themselves from the Settlement and explained how to do so.  Sixteen Class Members currently wish to be excluded from the settlement, and only a single Class Member, out of over 1,500, has objected.  Kessler Decl. ¶ 132. This response demonstrates strong support for the settlement.  *See Davis v. J.P. Morgan Chase & Co.*, No. 01 Civ. 6492, 2011 WL 4793835, at *3 (W.D.N.Y. Oct. 11, 2011) (granting final approval and noting "very little negative reaction by class members to the proposed settlement" where 11 out of 3,800 class members opted out, and 3 objected); *Willix*, 2011 WL 754862, at * 4 (granting final approval of the settlement where 7 out of 2,025 class members objected and 2 opted out); *Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207, 2010 WL 3119374, at * 3 (S.D.N.Y. Aug. 6, 2010) (granting final approval where there were no objections but 23 of 5,262 opted out, noting that "[a] small number of objections is convincing evidence of strong support by class members"); *Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008) (approving settlement where 13 out of 3,500 class members objected and 3 opted out, noting that "[t]he fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness).

24.     The parties have completed enough discovery to recommend settlement.  The

pertinent question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (internal quotation marks omitted). Here, the parties conducted substantial targeted discovery, which provided them ample information from which to weigh the strengths and weaknesses of their claims. This is significantly more discovery than many cases where settlements achieved final approval. *See, e.g.*, *Johnson*, 2011 WL 4357376, at *9-10 (finding that parties were "well-equipped to evaluate the strengths and weaknesses of the case" and granting final approval where parties engaged in *informal* discovery, class counsel conducted interviews and reviewed information produced by defendants, but no depositions were taken); *Diaz v. E. Locating Serv.*, 2010 WL 5507912, at *5 (S.D.N.Y. Nov. 29, 2010) (granting final approval where parties reached settlement pre-litigation, and informal discovery consisted of pre-suit exchange of documents); *Matheson v. T-Bone Rest., LLC*, No. 09 Civ. 4214, 2011 WL 6268216, at *5 (S.D.N.Y. Dec. 13, 2011) (granting final approval where parties engaged in an informal exchange of information, and no depositions were taken); *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 56-57 (E.D.N.Y. 2010) (granting final approval where settlement was reached pre-formal document disclosure). The third *Grinnell* factor weighs heavily in favor of final approval. Objector Morris's objection that the parties did not conduct sufficient discovery is without merit and is overruled.

25.     The risk of establishing liability and damages further weighs in favor of final approval. "Litigation inherently involves risks." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, the primary purpose of settlement is to avoid the uncertainty of a trial on the merits. *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. Jun. 25, 2007). Here, the fact-intensive nature of Plaintiffs' off-the-clock claim

presents risk. The proposed settlement eliminates this uncertainty. The fourth and fifth *Grinnell* factors therefore weigh in favor of final approval.

26.     The risk of obtaining class certification and maintaining it through trial is also present. A contested class certification motion would likely require extensive discovery and briefing. If the Court were to grant class certification, Defendant might seek to file an appeal under Federal Rule of Civil Procedure 23(f), the resolution of which would require an additional round of briefing. Settlement eliminates the risk, expense, and delay inherent in the litigation process. The sixth *Grinnell* factor weighs in favor of final approval.

27.     It is not certain whether Defendants would be able to withstand a greater judgment. In any event, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 n.9 (alterations and citation omitted)); *see also Castagna v. Madison Square Garden, L.P.*, No. 09 Civ. 10211, 2011 WL 2208614, at *7 (S.D.N.Y. June 7, 2011). Courts assign "relatively little weight" to this factor. *Davis*, 2011 WL 4793835, at *4. This factor is neutral and does not preclude final approval. Objector Morris's objection that the parties did not engage in discovery on Defendant's financial condition is overruled.

28.     Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement amount is more than reasonable. The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical

equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian &*

*German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of

reasonableness with respect to a settlement – a range which recognizes the uncertainties of law

and fact in any particular case and the concomitant risks and costs necessarily inherent in taking

any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

"[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a

hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell*

*Corp.*, 495 F.2d at 455 n.2. "It is well-settled that a cash settlement amounting to only a fraction

of the potential recovery will not *per se* render the settlement inadequate or unfair." *Officers for*

*Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982); *see also Cagan v. Anchor Sav.*

*Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423, at *12-13 (E.D.N.Y. May 22, 1990) (approving

$2.3 million class settlement over objections that the "best possible recovery would be

approximately $121 million").

      29.     Objector Morris's objection that the settlement amount is too low is overruled.

However, even if, as Objector Morris claims, the best possible recovery was $125 million, it would

not bar approval of the settlement, given the risks. *See id.* (approving $2.3 million class settlement

over objections that the "best possible recovery would be approximately $121 million").

Objector Morris has not submitted sufficient evidence that suggests that the value of the case is as

high as she claims it is. Plaintiff credibly demonstrates that the settlement amount represents

approximately 38% of the estimated value of the case. The eighth and ninth *Grinnell* factors

therefore weigh in favor of final approval.

## DISSEMINATION OF NOTICE

30.     Pursuant to the Preliminary Approval Order, the Notice was sent by first-class mail to each Class Member at his or her last known address (with re-mailing of returned Notices for which new addresses could be located).  The Court finds that the Notice fairly and adequately advised Class Members of the terms of the settlement, as well as the right of members of the class to opt out of or to object to the settlement, and to appear at the fairness hearing conducted on April 17, 2012.  Class Members were provided with the best notice practicable under the circumstances.

31.     The Court further finds that the Notice and its distribution comported with all constitutional requirements, including those of due process.

32.     The Court confirms Berdon Claims Administration LLC as the claims administrator.

## AWARD OF FEES AND COSTS TO CLASS COUNSEL AND AWARD OF SERVICE AWARDS TO PLAINTIFFS

33.     On December 15, 2011, the Court appointed Shulman Kessler LLP as Class Counsel because they met all of the requirements of Fed. R. Civ. P. 23(g).  *See Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 165 (S.D.N.Y. 2008) (Rule 23(g) requires the court to consider "the work counsel has done in identifying or investigating potential claims in the action, . . . counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, . . . counsel's knowledge of the applicable law, and . . . the resources counsel will commit to representing the class") (internal quotation marks omitted).

34.     Class Counsel, Shulman Kessler LLP, are experienced employment lawyers with

16

good reputations among the employment law bar. They have substantial experience prosecuting large-scale wage and hour class and collective actions. Kessler Decl. ¶ 8-14; Swartz Decl. ¶ 3-5; Docket No. 108 ¶ 15. The work that Class Counsel has performed in litigating and settling this case demonstrates their commitment to the Class and to representing the Class's interests. Class Counsel have committed substantial resources to prosecuting this case.

35.      Plaintiff's Counsel, Outten & Golden LLP, also have substantial experience prosecuting wage and hour and other employment-based class and collective actions. Their experience, and the work that they performed in defending the settlement, has benefitted the class. Plaintiff's Counsel's efforts on the case provide further support for the requested award of attorneys' fees. *See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 249 (2d Cir. 2007) ("[U]nder the 'equitable fund' doctrine, attorneys for the successful party may petition for a portion of the fund as compensation for their efforts . . . ."); *County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1327-28 (2d Cir. 1990) (noting that key consideration in determining whether an attorney fee is awarded under equitable fund doctrine is "value to class of legal work performed for its benefit"); *In re PaineWebber Ltd. P'ships Litig*, 999 F. Supp. 719, 723 (S.D.N.Y. 1998) ("The common or equitable fund doctrine . . . allows an attorney whose actions have conferred a benefit upon a given group or class of litigants [to] file a claim for reasonable compensation for his efforts.") (internal quotation marks omitted)).

36.      The Court hereby grants Plaintiff's Motion for Attorneys' Fees and awards Class and Plaintiff's Counsel $833,333.33, which is one-third of the settlement fund.

37.      The trend in this Circuit is to use the percentage of the fund method to compensate attorneys in common fund cases like this one. *McDaniel v. County of Schenectady*,

595 F.3d 411, 417 (2d Cir. 2010); *Wal-Mart Stores*, 396 F.3d at 121; *deMunecas,* 2010 WL 3322580, at *8.

38.     Although the Court has discretion to award attorneys' fees based on the lodestar method or the percentage-of-recovery method, *McDaniel*, 595 F.3d at 417, in wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award, *see deMunecas,* 2010 WL 3322580, at *7; *Khait,* 2010 WL 2025106, at *8. Fee awards in wage and hour cases are meant to "encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." *Sand v. Greenberg*, No. 08 Civ. 7840, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010). The FLSA and NYLL are remedial statutes, *see A.H. Phillips v. Walling*, 324 U.S. 490, 493 (1945) (recognizing the FLSA's objective, which is ensuring that every employee receives "a fair day's pay for a fair day's work"); *Samiento*, 883 N.E.2d at 994 (noting the "remedial nature" of the NYLL); the purposes of which are served by adequately compensating attorneys who protect wage and hour rights, *see Reyes*, 2011 WL 4599822, at *7; *Willix*, 2011 WL 754862, at *6; *McMahon*, 2010 WL 2399328, at *7; *Sand*, 2010 WL 69359, at *3.

39.     In wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award. *Reyes*, 2011 WL 4599822, at *7; *Willix*, 2011 WL 754862, at *6; *deMunecas*, 2010 WL 3322580, at *8. Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general," attorneys who fill the private attorney general role must be adequately compensated for their efforts. *Reyes*, 2011 WL 4599822, at *7; *deMunecas*, 2010 WL 3322580, at *8; *McMahon*, 2010

18

WL 2399328, at *7; *Sand*, 2010 WL 69359, at *3. If not, wage and hour abuses would go

without remedy because attorneys would be unwilling to take on the risk. *Reyes*, 2011 WL

4599822, at *7; *Willix*, 2011 WL 754862, at *6; *McMahon*, 2010 WL 2399328, at *7; *Sand*,

2010 WL 69359, at *3 ("But for the separate provision of legal fees, many violations of the Fair

Labor Standards Act would continue unabated and uncorrected.").

40.     Common fund recoveries are contingent on a successful litigation outcome. Such

"contingency fees provide access to counsel for individuals who would otherwise have difficulty

obtaining representation . . . and transfer a significant portion of the risk of loss to the attorneys

taking a case. Access to the courts would be difficult to achieve without compensating attorneys

for that risk." *deMunecas,* 2010 WL 3322580, at *8 (internal quotation marks omitted). Many

individual litigants, including the Class Members here, "cannot afford to retain counsel at fixed

hourly rates . . . yet they are willing to pay a portion of any recovery they may receive in return

for successful representation." *Id.*

41.     Class and Plaintiff's Counsel's request for one-third of the Fund is reasonable and

"consistent with the norms of class litigation in this circuit." *Gilliam*, 2008 WL 782596, at *5.

42.     Although *Arbor Hill Concerned Citizens Neighborhood Association v. County of

Albany* does not address a common fund fee petition, it supports class counsel's request for one-

third of the fund because "reasonable, paying client[s]," 522 F.3d 182, 191 (2d Cir. 2008),

typically pay one-third of their recoveries under private retainer agreements. *Reyes*, 2011 WL

4599822, at *8; *deMunecas*, 2010 WL 3322580, at *9. While *Arbor Hill* is not controlling

because it does not address a common fund fee petition, it supports use of the percentage of the

19

fund method. *Willix*, 2011 WL 754862, at \*7. Class Counsel's retainer agreement with the named Plaintiff, which entitled Class Counsel to a one-third contingency fee, also weighs heavily in favor of Class and Plaintiff's Counsel's fee request here.

43.     All of the factors in *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 48-49 (2d Cir. 2000) weigh in favor of the requested fee award.

44.     Applying the lodestar method as a "cross check," *see id.* at 50, the Court finds that the fee class counsel seek is reasonable. Courts regularly award lodestar multipliers from 2 to 6 times lodestar. *See, e.g., Buccellato v AT&T Operations, Inc.*, No. 10 Civ. 463, 2011 WL 4526673 (N.D. Cal. Jun. 30, 2011) (approving multiplier of 4.3 in wage and hour case); *Khait*, 2010 WL 2025106, at \*7-8 (awarding multiplier of 3.3 in wage and hour case); *In re Lloyd's Am. Trust Fund Litig.*, 2002 WL 31663577, at \*27 (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit"); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) (the "modest multiplier of 4.65 is fair and reasonable"); *In re NASDAQ Market- Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (awarding multiplier of 3.97 times lodestar); *In re RJR Nabisco, Inc. Sec. Litig.*, MDL No. 818, No. 88 Civ. 7905, 1992 WL 210138, at \*6-8 (S.D.N.Y. Aug. 24, 1992) (awarding multiplier of 6); *Rabin v. Concord Assets Grp., Inc.*, No. 89 Civ. 6130, 1991 WL 275757, at \*2 (S.D.N.Y. Dec. 19, 1991) (awarding multiplier of 4.4). Compared to the multipliers that are regularly awarded in this District, Class Counsel's request of 3.04 times their own lodestar, and 2.01 times the total of their lodestar and Plaintiff's Counsel's lodestar combined is well within the range of reasonable.

45.     Class and Plaintiff's Counsel will likely be required to perform more work on

behalf of the class after final approval, including assisting with the administration of the settlement, answering Class Member questions, and potentially defending an appeal, the ultimate multiplier will be less than it is now, which further supports their fee request. *See Khait*, 2010 WL 2025106, at *9 ("The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request.").

46.     The Court also awards Class Counsel reimbursement of their litigation expenses in the amount of $7,707.10. Courts typically allow counsel to recover their reasonable out-of-pocket expenses. *See In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003). Here, Class Counsel's unreimbursed expenses, including filing fees, telephone charges, postage, transportation, working meals, photocopies, and electronic research, are reasonable and were incidental and necessary to the representation of the Class.

47.     The attorneys' fees and the amount in reimbursement of litigation costs and expenses shall be paid from the settlement fund.

48.     The Court finds reasonable a service award of $7,500.00 to Plaintiff Jorge Guadron. The amount shall be paid from the settlement fund.

49.     Such service awards are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs. *deMunecas*, 2010 WL 3322580, at *9; *Khait*, 2010 WL 2025106, at *9.

50.     The "Effective Date" of the settlement shall be 31 days after the date of this Order

if no party appeals this Order. If a party appeals this Order, the "Effective Date" of the settlement shall be the day after all appeals are finally resolved.

      51.     Within 5 days of the Effective Date, the claims administrator shall distribute the funds in the settlement account by making the following payments in the order below:

      a.     Paying Class and Plaintiff's Counsel one-third of the fund ($833,333.33);

      b.     Paying the Claims Administrator;

      c.     Reimbursing Class Counsel for $7,707.10 in litigation costs;

      d.     Paying a service award of $7,500.00 to Jorge Guadron; and

      e.     Paying the remainder of the fund to Class Members in accordance with the allocation plan described in the Settlement Agreement.

      52.     The Court retains jurisdiction over this action for the purpose of enforcing the Settlement Agreement and overseeing the distribution of the settlement funds. The parties shall abide by all terms of the Settlement Agreement, which are incorporated herein, and this Order.

It is so ORDERED this **8** day of **May**, 2012.

Honorable Andrew L. Carter United States
District Judge