

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3-11-13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------
Kim Morris, Melissa Adlin, and
Jorge Guadron, on behalf of
themselves and all others
similarly situated,

                         Plaintiffs,        09 Civ. 1932 (ALC)(MHD)

                                       FINAL ORDER

    - against -

Affinity Health Plan, Inc.,

                        Defendant.
-----------------------------------

ANDREW L. CARTER, JR., District Judge:

I.   Introduction

    This case involves a class action lawsuit brought by marketing representatives employed by Defendant Affinity Health Plan, Inc. in the South Region for violations of federal and state labor law. Plaintiffs allege they have not been properly compensated for overtime hours worked for Defendant. Plaintiffs and Defendant reached a settlement approved by the Court on May 8, 2012. Defendant filed a Motion to Strike the Notices of Exclusion of two Plaintiffs, Kim Morris and Melissa Adlin, arguing they should be bound by the Settlement Agreement. Opt Out Plaintiffs moved to amend the Complaint to include the individual claims of those who excluded themselves from the settlement. Both motions were fully briefed by the parties as of July 9, 2012.

## II. Background

The facts recounted are only those relevant to the instant motions and do not encompass all of the issues in this case.

After participating in mediation, the parties reached a tentative settlement in April of 2011. The settlement was contemplated on a class-wide basis, and the parties drafted a Memorandum of Understanding reflecting the terms. On or around July 20, 2011, a Joint Stipulation of Settlement and Release ("Settlement Agreement") was negotiated by the parties and signed by Plaintiffs Adlin and Guadron, their counsel, an officer of Defendant, and Defendant's counsel.

In August of 2011, Plaintiffs Morris and Adlin voiced their opposition to the Settlement Agreement. Plaintiff Morris refused to sign any documents relating to the settlement. Plaintiff Adlin sent an email to counsel seeking to revoke her signature on the Settlement Agreement.

After the Settlement Agreement was submitted to the Court for preliminary approval and permission to send notice to the putative class, Plaintiff Adlin filed a Notice of Exclusion from the class settlement on March 7, 2012. On the same day, Plaintiff Morris filed her objections to the settlement. The Court held final fairness hearings on April 17 and 18, 2012, at which time Plaintiff Morris had a full and fair opportunity to

present her objections. The Court approved the settlement through its May 8, 2012 Order.

In addition to Plaintiffs Morris and Adlin, fourteen (14) individuals filed a Notice of Exclusion, seeking to opt out of the class settlement ("Opt Out Plaintiffs"). The parties do not dispute the notices of these fourteen individuals were timely filed, and they have successfully removed themselves from this case. Eleven (11) of the fourteen (14) Opt Out Plaintiffs also filed a consent to sue in accordance with the Fair Labor Standards Act ("FLSA"). Opt Out Plaintiffs who filed a consent to sue may assert claims under the FLSA and New York Labor Law, whereas those who have not filed a consent to sue may only assert claims arising under state law.

### III. Discussion

Defendant argues in the Motion to Strike that Plaintiffs Morris and Adlin should not be permitted to opt out of the class settlement because they were integrally involved in negotiating the Settlement Agreement. Specifically, Plaintiff Adlin and Plaintiff Morris's counsel, acting with apparent authority to effectuate a settlement on behalf of Plaintiff Morris, signed the Settlement Agreement. Defendant contends Plaintiff Morris is effectively bound by her counsel's signature even if she did not sign the Settlement Agreement herself. Therefore, Plaintiff

Adlin and Plaintiff Morris's Notices of Exclusion should be stricken from the record.

In the Motion to Amend, Opt Out Plaintiffs request leave to amend the operative Complaint to include their individual claims. Opt Out Plaintiffs argue leave to amend should be freely granted because those who have filed a consent to sue under the FLSA are already Party Plaintiffs to this action. For the individuals pursuing only state law claims, amendments should be permitted because their claims are factually identical to the claims already asserted in the Complaint on behalf of the class. Opt Out Plaintiffs also contend their state law claims should relate back to the filing of the original Complaint. Lastly, Plaintiff Morris seeks to add a wrongful termination claim, which she asserts also should relate back to the filing of the Complaint.

The Court will address the merits of Defendant's Motion to Strike first and then Opt Out Plaintiffs' Motion to Amend.

### A. Motion to Strike

Class members choosing to opt out of the settlement were required to file a Notice of Exclusion by March 7, 2012 in accordance with Magistrate Judge Dolinger's Order dated February 23, 2012. Plaintiff Adlin filed her Notice of Exclusion on March 7, 2012, and Plaintiff Morris filed her objections to the proposed settlement the same day.

### i. Plaintiff Morris

At the hearing before the Court on May 29, 2012, Plaintiff Morris requested an extension of time to opt out or a second opt out period for those who objected to the settlement. Although Plaintiff Morris filed objections to the settlement before the end of the opt out period, she had not filed a Notice of Exclusion. The Court directed Plaintiff Morris to opt out by June 19, 2012, if she so chose, and Plaintiff Morris filed her Notice of Exclusion on June 19.

Defendant contends Plaintiff Morris should not be given additional time or a second opportunity to opt out. Since her Notice of Exclusion was not timely filed, it should be stricken from the record. "The Second Circuit and this District have analyzed a motion for a second opportunity to opt out of a certified class according to the 'excusable neglect' standard governing a motion for an enlargement of time under Federal Rule of Civil Procedure 6(b)(2)." In re Prudential Sec. Inc. Ltd. P'ships Litig., 158 F.R.D. 301, 303 (S.D.N.Y. 1994) (citing Supermarkets Gen. Corp. v. Grinnell Corp., 490 F.2d 1183, 1186 (2d Cir. 1974)); see also In re Painewebber Ltd. P'ships Litig., 147 F.3d 132, 135 (2d Cir. 1998) ("[A] class member seeking permission to opt out late must first demonstrate 'excusable neglect' for his or her failure to comply with a fixed deadline."). "The determination whether a party's conduct

5

constitutes 'excusable neglect' is an equitable one that requires a court to consider all relevant circumstances." Painewebber, 147 F.3d at 135.

It is undisputed that Plaintiff Morris has objected to the Settlement Agreement since it was initially presented to her for execution. She refused to sign it, and she timely filed her objections with the Court. She presented evidence and testified as to why she believes the settlement is unfair at the hearings on April 17 and 18. Defendant can claim neither bad faith nor surprise at Plaintiff Morris's request to opt out. Forcing Plaintiff Morris to accept a settlement she has clearly opposed from its inception would be wholly inequitable, even if the failure to file a timely Notice of Exclusion was due to her own carelessness. See id. (finding 'excusable neglect' can encompass "even those omissions caused by circumstances within the movant's control").

When 'excusable neglect' is established, it is within the Court's discretionary power to accept or reject an untimely Notice of Exclusion in a class action. Mitrani v. Aesthetech Corp., No. 95 Civ. 7293 (HB), 95 Civ. 7572 (HB), 2001 WL 1097889, at *2 (S.D.N.Y. Sept. 10, 2001) ("[T]he decision to allow an opt out after the deadline is discretionary."). Since Plaintiff Morris has continually voiced her opposition to the settlement and there is no significant prejudice to Defendant,

Plaintiff Morris's Notice of Exclusion is accepted, and she is permitted to opt out of the settlement.

Defendant's argument that counsel had apparent authority to bind Plaintiff Morris to the settlement is unpersuasive. Upon learning of the terms in the Settlement Agreement, as Plaintiff Morris was not physically present when it was negotiated, she refused to execute the document. (April 17, 2012 Tr. 27:11-20.) While the settlement was accepted as fair and adequate for the class, Plaintiff Morris has the right to disagree. See In re Ivan F. Boesky Sec. Litig., 948 F.2d 1358, 1366 (2d Cir. 1991) (finding where lead counsel negotiated and presented a settlement to the court, objectors would have a right to reject the settlement so long as their counsel's conduct did not evidence agreement to the settlement).

In this case, Plaintiff Morris's attorney[1] was negotiating a settlement for the Named Plaintiffs as well as class members. Thereafter, Plaintiff Morris concluded the settlement was not in her individual interest. (April 17, 2012 Tr. 24:25-25:7.) Courts in this District have held, "the named plaintiffs should not be permitted to hold the absentee class hostage by refusing to assent to an otherwise fair and adequate settlement in order to secure their individual demands." Maywalt v. Parker & Parsley

---

[1] At the time of settlement negotiations, Plaintiff Morris was represented by Class Counsel Troy Kessler. She subsequently retained her current attorney to represent her.

7

Petroleum Co., 864 F. Supp. 1422, 1430 (S.D.N.Y. 1994) (citation omitted). Yet, the reverse should be true as well; a class representative's individual claims should not be held hostage by the class settlement. See Tardiff v. Knox County, 567 F. Supp. 2d 201, 210 (D.Me. 2008) ("A class representative should be able to fulfill her fiduciary obligation to the class without implicitly waiving any of her individual rights under Fed. R. Civ. P. 23."). By permitting Plaintiff Morris to opt out, the fair and adequate settlement for remaining class members can proceed without extinguishing Plaintiff Morris's right to decide if the settlement is in her individual interest.

### ii. Plaintiff Adlin

Plaintiff Adlin timely filed her Notice of Exclusion before the opt out period closed. Defendant argues her signature on the Settlement Agreement forecloses her ability to opt out, particularly because the Settlement Agreement is a binding contract under New York and federal law.

As Defendant correctly points out, the Settlement Agreement is a binding contract that is subject to the general principles of contract interpretation.[2] Powell v. Omnicom, 497 F.3d 124, 128 (2d Cir. 2007) ("A settlement agreement is a contract that

---

[2] It is unnecessary for the Court to determine whether federal common law or state law governs the interpretation of the Settlement Agreement because there is no material difference between the two. See Ciaramella v. Reader's Digest Ass'n, Inc., 131 F.3d 320, 322 (2d Cir. 1997) (finding no material difference between the New York or federal common law standard for interpreting settlement agreements).

8

is interpreted according to general principles of contract law. Once entered into, the contract is binding and conclusive.") (citation omitted). When parties make a deliberate and informed choice to settle a case, they are bound to the settlement and generally cannot seek relief from the courts if they change their minds. United States v. Bank of New York, 14 F.3d 756, 759 (2d Cir. 1994); Cartier Int'l, N.V. v. QVC, Inc., 677 F. Supp. 2d 712, 715 (S.D.N.Y. 2009); see also Hallock v. State of New York, 64 N.Y.2d 224, 230 (1984) ("Stipulations of settlement are favored by the courts and not lightly cast aside[.])". "To hold otherwise would undermine the finality of judgments in the litigation process." Bank of New York, 14 F.3d at 759.

Here, Plaintiff Adlin knowingly and voluntarily signed the Settlement Agreement negotiated by Plaintiffs and Defendant. Despite emailing counsel several days later to withdraw her signature, the agreement was still binding with respect to her. See Condo v. Mulcahy, 88 A.D.2d 497, 499-500 (App. Div. 2d Dep't 1982) (holding where plaintiff signed settlement documents and six days later tried to revoke them, the settlement documents were binding on plaintiff). Further, after executing the Settlement Agreement, Defendant began to perform in accordance with its terms before it was ratified by the Court. These actions evidence the parties' intent to treat the Settlement Agreement as an enforceable contract upon execution. Therefore,

9

Plaintiff Adlin's argument that the Settlement Agreement was not binding until the Court approved it is unavailing.

By signing the Settlement Agreement, Plaintiff Adlin incurred additional legal consequences as well. Notably, a class representative who is a party to the settlement loses the right to exclude themselves from the class. See Boesky, 948 F.2d at 1366 ("[A]" named plaintiff who is a party to a proposed class settlement may lose whatever opt-out rights are available."). This outcome flows naturally from the well-settled legal concept that settlement agreements are contracts. It would substantially undermine the settlement process in class actions if a named plaintiff was permitted to negotiate and execute settlement documents only to opt out of the class later.

The rationale for precluding Plaintiff Adlin from opting out underscores the differences between Plaintiffs Morris and Adlin. Plaintiff Morris refused to accept the terms of the settlement at every stage, including the initial refusal to sign the Settlement Agreement. It should have been abundantly clear to Defendant that Plaintiff Morris was not interested in settlement under the current terms. Plaintiff Adlin, on the other hand, signed the Settlement Agreement and later decided to repudiate settlement. Based on Plaintiff Adlin's assent to the agreement, Defendant could have reasonably expected she was among the settling class members. To allow Plaintiff Adlin to

10

revoke her signature on the Settlement Agreement and opt out of the class would render a binding contract ineffectual as to the parties that signed it.

Given that Plaintiff Adlin signed the Settlement Agreement, she is a party to the settlement. She has not alleged sufficient legal grounds to excuse her performance under a binding contract. As such, the Court will not permit her to opt out of the class settlement, and her Notice of Exclusion is **STRICKEN** from the record.

### B. Motion to Amend the Complaint

Opt Out Plaintiffs move to amend the Complaint based primarily on two grounds. First, since many of the Opt Out Plaintiffs have filed a consent to sue in accordance with section 216(b) of the FLSA, they are Party Plaintiffs to the current suit and should be permitted to add their individual claims. Additionally, Opt Out Plaintiffs who retain only state law claims should be allowed to add their claims because they are substantially similar to those alleged in the Complaint.

The self-serving argument from Opt Out Plaintiffs contends even though these individuals requested to be excluded from this litigation entirely and the resulting settlement, they should be permitted to bring individual claims in the same action from which they removed themselves. To the contrary, the Settlement Agreement resolves the FLSA and New York Labor Law claims for

11

applicable class members. (Kozak Decl., Ex. C § 3.6, Dkt. No. 188-3.) Opt Out Plaintiffs have excluded themselves from all claims in this suit, and the opt in requirement of the FLSA[3] does not provide a vehicle to re-enter this case.

The Supreme Court has clearly stated individuals who opt out of a class action are removed from the case entirely. Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 810-11 (1985) (finding if a plaintiff takes advantage of the opportunity to opt out, he is removed from the litigation entirely); Am. Pipe & Const. Co. v. Utah, 414 U.S. 538, 549 (1974) (noting once individuals opt out of a class action, they are "nonparties to the suit and ineligible to participate in a recovery or to be bound by a judgment"); see also Martens v. Smith Barney, Inc., 190 F.R.D. 134, 139-40 (S.D.N.Y. 1999) ("It is clear that named plaintiffs, like non-named plaintiffs, who opt out of a settlement no longer remain in the class in any capacity and if they wish to pursue their unique cases they must actively do so separate from the class."). "The efficiency afforded by the class action procedure would be poorly served if numerous class members were permitted to opt out of the class and then remain

---

[3] Under the FLSA, 29 U.S.C. § 216(b), cases that proceed as collective actions include "only plaintiffs who affirmatively opt in . . . whereas in a class action [under Fed. R. Civ. P. 23] potential class members are parties to the suit unless they affirmatively opt out." Damassia v. Duane Reade, Inc., 250 F.R.D. 152, 161 (S.D.N.Y. 2008).

in the litigation with supposedly resurrected individual claims." Martens, 190 F.R.D. at 139.

Opt Out Plaintiffs are not without a forum to pursue their individual claims. They may have their FLSA and/or state law claims adjudicated by filing a new suit. See Sinclair Oil Corp. v. Atl. Richfield Co., 720 F. Supp. 894, 912 n.46 (D. Utah 1989) ("If the class is not certified, the individual member can move to intervene as the plaintiff in the uncertified class action and maintain it as an individual suit. If the class member opts out, he may file a separate suit."); In re Gulf Oil/Cities Serv. Tender Offer Litig., 725 F. Supp. 712, 718 (S.D.N.Y. 1989) (stating opt out plaintiffs litigated their individual claims by filing a new complaint). Since Opt Out Plaintiffs are no longer part of this litigation, they may not amend the Complaint to include their individual claims.

## IV. Conclusion

For the reasons set forth above, Defendant's Motion to Strike is **DENIED** with respect to Plaintiff Morris and **GRANTED** with respect to Plaintiff Adlin. Opt Out Plaintiffs' Motion to Amend is **DENIED**. Since Opt Out Plaintiffs are not a party to this suit, the Court does not address the statue of limitations arguments relating to their individual claims.

In accordance with the Court's May 8, 2012 Order, **FINAL JUDGMENT** is entered regarding the class settlement, approval of

13

attorney's fees, reimbursement of expenses, and approval of the class representative service award.

Pursuant to the Settlement Agreement, all claims asserted in this litigation by Named Plaintiffs and Class Members who have not opted out are hereby **DISMISSED WITH PREJUDICE**, subject only to an application for relief under Federal Rule of Civil Procedure 60(b)(1) and 60(d).

Plaintiff Morris is not eligible for a class representative service award since she has opted out of this litigation. In accordance with Section 3.3(B) of the Settlement Agreement, the Court finds reasonable a service award of $20,000.00 to Plaintiff Melissa Adlin. The amount shall be paid from the settlement fund. Such service awards are common in class action cases and serve to compensate Plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the Plaintiffs. deMunecas v. Bold Food, LLC, No. 09 Civ. 00440 (DAB), 2010 WL 3322580, at *9 (S.D.N.Y. Aug. 23, 2010); Khait v. Whirlpool Corp., No. No. 06-6381 (ALC), 2010 WL 2025106, at *9 (E.D.N.Y. Jan. 20, 2010).

The Effective Date of the settlement shall be thirty-one (31) days after the date of this judgment if no party appeals in accordance with the Settlement Agreement. If a party appeals,

the Effective Date shall be one (1) day after all appeals are finally resolved.

The Settlement Administrator shall distribute the funds in the settlement account within five (5) days of the Effective Date in accordance with the Court's May 8, 2012 Order and this Order. The Court retains jurisdiction over this action for the purpose of enforcing the Settlement Agreement and overseeing the distribution of the settlement fund.

The Clerk of Court is respectfully directed to close this case and to enter judgment consistent with this Order.

SO ORDERED.

Dated: New York, New York
March 11, 2013

_____
Andrew L. Carter, Jr.
United States District Judge